Hearing Date: June 11, 2021 @ 2:00 P.M.
Objection Deadline: June 4, 2021

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| STONEWAY CAPITAL LTD., *et al.*[1] | Case No. 21-10646 (JLG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF JOINT MOTION OF**
**UMB BANK, N.A., AS INDENTURE TRUSTEE AND US COLLATERAL AGENT**
**AND STEERING COMMITTEE OF AD HOC GROUP OF NOTEHOLDERS FOR**
**LIMITED RELIEF FROM THE AUTOMATIC STAY,**
**PURSUANT TO 11 U.S.C. § 362(d)(2)**

**PLEASE TAKE NOTICE** that on April 7, 2021 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

**PLEASE TAKE FURTHER NOTICE** that on May 21, 2021, UMB Bank, N.A. ("**UMB**," or "**Indenture Trustee/US Collateral Agent**"), by its attorneys Perkins Coie LLP, and members of the Steering Committee of the Ad Hoc Group of Noteholders ("**Ad Hoc Steering Committee**", and together with UMB or Indenture Trustee/US Collateral Agent, "**Movants**") of the 10.000% senior secured notes due 2027 issued by Stoneway Capital Corporation ("**SCC**"), by their attorneys Cleary Gottlieb Steen & Hamilton LLP, have jointly filed a Motion ("**Motion**") requesting that the United States Bankruptcy Court for the Southern District of New York ("**Court**") grant the Movants limited relief from the automatic stay in the above-captioned proceedings pursuant to 11 U.S.C. § 362(d)(2) to permit the Indenture Trustee/US Collateral Agent, pursuant to the written

---

[1] The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction where they operate are: Stoneway Capital Ltd. (4518) (BVI), Stoneway Capital Corporation (1512) (Canada), Stoneway Energy International LP (1029) (Canada), Stoneway Energy LP (1028) (Canada), Stoneway Group LP (0837) (Canada) and Stoneway Power Generation Inc. (1748) (Canada).

1

direction of the Required Secured Parties (as defined in the Motion), to withdraw funds from the Omnibus Account (as defined in the Motion), for all purposes permitted under the Indenture and the Collateral Documents (as defined in the Motion).  A hearing (the "**Hearing**") on the Motion will be held before the Honorable Judge James L. Garrity, Jr., United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 723, New York, New York 10004. The Hearing will commence on June 11, 2021 at 2:00 P.M. (Prevailing Eastern Time).  In light of the COVID-19 pandemic, the Hearing will only be conducted telephonically.

**PLEASE TAKE FURTHER NOTICE** copies of the Motion and other pleadings for subsequent hearings may be obtained free of charge by visiting Prime Clerk website at https://cases.primeclerk.com/StonewayCapital.  You may also obtain copies of any pleadings by visiting http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein. In order to access copies of this Motion and other pleadings for subsequent hearings through PACER, you will need an account and a credit card.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("**Objections**") to the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with this Court on the docket of *In re Stoneway Capital Ltd.*, Case No. 21-10646 (JLG) by registered users of this Court's electronic filing system and in accordance with the Bankruptcy Court's General Order M-399 (which is available at http://nysb.uscourts.gov); and (d) be served so as to be actually received by June 4, 2021 ("**Objection Deadline**"), by (i) the Chambers of the Honorable Judge James L. Garrity, Jr., United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004; (ii) counsel to the Indenture Trustee/US Collateral Agent, Perkins Coie LLP, 1155 Avenue of the Americas 22nd Floor, New York, New York 10036, Attn: Tina N. Moss, Ronald T. Sarubbi, and Lincoln Finkenberg; (iii) counsel to the Ad Hoc Steering Committee, Cleary Gottlieb Steen Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn: Richard J. Cooper, Luke A. Barefoot, and Kristin Corbett; (iv) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: Brian Masumoto, Shara Cornell, and Linda Riffkin; and (v) any parties that have appeared and requested notice pursuant to the Bankruptcy Rules.

**PLEASE TAKE FURTHER NOTICE** that parties wishing to participate in the Hearing must make arrangements through CourtSolutions LLC (www.courtsolutions.com). Instructions to register for CourtSolutions LLC are attached to General Order M-543.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may affect your rights. Please read the Motion carefully and, if you have one available, discuss it with your attorney.  (If you do not have an attorney, you should consider consulting with one.)

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Movants.

Dated: May 21, 2021
New York, New York

Respectfully Submitted,

**PERKINS COIE LLP**

BY: /s/ Tina N. Moss

Tina N. Moss, Esq.
Ronald T. Sarubbi, Esq.
Lincoln Finkenberg, Esq.
1155 Avenue of the Americas 22nd Floor
New York, New York 10036
(212) 262-6910
*Attorneys for UMB Bank, N.A.,*
*as Indenture Trustee and US Collateral Agent*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

BY: /s/ Luke A. Barefoot, Esq.

Richard J. Cooper, Esq.
Luke A. Barefoot, Esq.
Kristin Corbett, Esq.
One Liberty Plaza
New York, New York 10006
(212) 225-2000
*Attorneys for Ad Hoc Steering Committee*

Hearing Date: June 11, 2021 @ 2:00 P.M.
Objection Deadline: June 4, 2021

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Chapter 11 |
| STONEWAY CAPITAL LTD., *et al.*[1] | Case No. 21-10646 (JLG) |
| Debtors. | (Jointly Administered) |

### JOINT MOTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE AND US COLLATERAL AGENT, AND STEERING COMMITTEE OF AD HOC GROUP OF NOTEHOLDERS PURSUANT TO 11 U.S.C. § 362(d)(2) FOR LIMITED RELIEF FROM THE AUTOMATIC STAY

UMB Bank, N.A. ("**UMB**," or "**Indenture Trustee/US Collateral Agent**"), by its attorneys Perkins Coie LLP, and members of the Steering Committee of the Ad Hoc Group of Noteholders ("**Ad Hoc Steering Committee**", and together with UMB or Indenture Trustee/US Collateral Agent, "**Movants**") of the 10.000% senior secured notes due 2027 issued by Stoneway Capital Corporation ("**SCC**"), by their attorneys Cleary Gottlieb Steen & Hamilton LLP, jointly submit this Motion ("**Motion**") requesting that the United States Bankruptcy Court for the Southern District of New York ("**Court**") grant the Movants limited relief from the automatic stay in the above-captioned proceedings pursuant to Section 362(d)(2) of chapter 11 of title 11 of the United States Code ("**Bankruptcy Code**")

---

[1] The Debtors in these chapter 11 cases and the last four digits of their registration numbers in the jurisdiction where they operate are: Stoneway Capital Ltd. (4518) (BVI), Stoneway Capital Corporation (1512) (Canada), Stoneway Energy International LP (1029) (Canada), Stoneway Energy LP (1028) (Canada), Stoneway Group LP (0837) (Canada) and Stoneway Power Generation Inc. (1748) (Canada).

1

to permit the Indenture Trustee/US Collateral Agent, pursuant to the written direction of the Required Secured Parties (as defined below), to withdraw funds from that certain account established by UMB on or about April 24, 2020 in its capacity as Depositary Agent and held at UMB as Depositary Bank in the name of "UMB US Coll Agent FBO Secured Parties" (the Secured Parties being the Senior Secured Noteholders (as defined below) and the Argentine revolving lenders pursuant to certain secured revolving credit facilities) ("**Omnibus Account**"), for all purposes permitted under the Collateral Documents (as defined under the Indenture) ("**Collateral Documents**").

## Preliminary Statement

1.  The funds held by UMB as Depositary Agent in the Omnibus Account constitute the cash proceeds of enforcement actions taken in April 2020 by the Indenture Trustee/US Collateral Agent at the written direction of the Required Secured Parties following an event of default under the applicable Indenture. Accordingly, these funds are not property of the Debtors' estates. Although the Debtors have not articulated any basis on which the estates have any continued interest in the Omnibus Account, in light of the Debtors' unwillingness to recognize that the US Collateral Agent holds title to the Omnibus Account for the benefit of the Secured Parties, out of an abundance of caution, the Movants bring this Motion seeking relief from the automatic stay provisions of the Bankruptcy Code to access the funds held in the Omnibus Account for all permitted purposes. Movants are entitled to relief from the automatic stay in this instance because the Debtors have no equity in the Omnibus Account and the Omnibus Account is not necessary to an effective reorganization.

**Factual Background**

2.    On April 7, 2021 ("**Petition Date**"), in violation of a standstill agreement with the Ad Hoc Steering Committee, the Debtors filed with the Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, no statutory committee of creditors has been appointed in these Chapter 11 Cases, nor has the Court yet appointed a trustee or examiner herein.

3.    Each of the Debtors is a Canadian corporation or limited partnership with the sole exception of Stoneway Capital Ltd. ("**Stoneway Capital**"), which is a company organized in the British Virgin Islands. The Debtors are holding companies, whose subsidiaries also operate wholly outside of the United States. The Stoneway Entities[2] built, own and operate four power plants ("**Existing Power Plants**") in the greater Buenos Aires region that provide electricity to consumers in the wholesale electricity market in Argentina. All or substantially all of the Debtors' revenues are derived from the operations conducted in Argentina by the Argentinian Stoneway Entities.[3]

---

[2]    "**Stoneway Entities**" means, collectively, Stoneway Capital Ltd., a British Virgin Islands business company; Stoneway Group LP, a limited partnership organized under the laws of the Province of New Brunswick, Canada ("Stoneway Group"); Stoneway Power Generation Inc., a corporation organized under the laws of the Province of New Brunswick, Canada ("Stoneway Power"); Stoneway Capital Corporation, a corporation (No. 1239384-1) incorporated under the federal laws of Canada ("SCC"); Stoneway Energy International LP, a limited partnership organized under the laws of New Brunswick, Canada ("Stoneway International"); Stoneway Energy LP, a limited partnership organized under the laws of New Brunswick, Canada ("Stoneway Energy," and, together with Stoneway International, the "Canadian Guarantors"); Araucaria Energy S.A., a *sociedad anónima* (corporation) organized under the laws of the Republic of Argentina ("Araucaria Energy"); SPI Energy S.A., a *sociedad anónima* (corporation) organized under the laws of Argentina ("SPI Energy"); Araucaria Power Generation S.A., a *sociedad anónima* (corporation) organized under the laws of Argentina (the "Araucaria Power"); and Araucaria Generation S.A., a *sociedad anónima* (corporation) organized under the laws of Argentina ("Araucaria Generation," and, together with Araucaria, SPI and the Land SPV, the "Argentine Guarantors," and the Canadian Guarantors and the Argentine Guarantors, collectively, the "Subsidiary Guarantors").

[3]    "**Argentinian Stoneway Entities**" means, collectively, Araucaria Power, Araucaria Energy, SPI Energy and Araucaria Generation.

4.  Each of the Argentinian Stoneway Entities is a corporation formed under the laws of the Republic of Argentina. Araucaria Energy operates three of the four Existing Power Plants and has entered into power purchase agreements ("**PPAs**") with the Compañía Administradora del Mercado Mayorista Eléctrico (the Wholesale Energy Market Administration Company S.A., also known by its Spanish acronym "**CAMMESA**") on behalf of distributor agents and large users of the wholesale electricity market, to sell electricity produced from those plants to CAMMESA. *See* Declaration of David Mack in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings ("**Mack Decl.**"), ECF Doc. No. 3, ¶¶ 20-21. SPI Energy operates the fourth Existing Power Plant and has a PPA for that plant. *Id.* at ¶ 20. It also holds a fifth PPA, and the Stoneway Entities previously commenced construction to build a power plant adjacent to the fourth Existing Power Plant to service that PPA. *Id.* at ¶ 23. Araucaria Generation, upon information and belief, holds no assets and conducts no operations. Araucaria Power owns the real property upon which the Existing Power Plants are located. *Id.* at ¶ 18.

5.  SCC is the issuer under a senior secured notes indenture dated as of February 15, 2017 (as subsequently amended and restated from time to time, the "**Indenture**") by and among SCC, as issuer, the Canadian Limited Partnerships, as Canadian Guarantors, the Argentinian Stoneway Entities, as Argentinian Guarantors, Stoneway Power Generation Inc., and UMB, as successor Trustee, US Collateral Agent, registrar, transfer agent and paying agent, pursuant to which SCC originally issued $500 million of 10.00% senior secured notes due March 1, 2027. *Id.* at ¶¶ 25-27.

6.  On November 15, 2017, pursuant to an amendment to the Indenture, SCC issued an additional $165 million of 10.000% senior secured notes due March 1, 2027 for a total aggregate principal amount of $665 million (the "**Senior Secured Notes**"). As of February 28, 2021, the total outstanding principal was approximately $589 million, and the total amount owing including accrued

and unpaid interest, fees, expenses, costs and other charges totaled approximately $678 million. The holders of the Senior Secured Notes are referred to herein as the "**Senior Secured Noteholders**". *Id.*

7. The Ad Hoc Steering Committee consists of certain—but not all—members of an ad hoc group of Senior Secured Noteholders that holds over 85% of the Senior Secured Notes (the "**Ad Hoc Group of Noteholders**"). The Ad Hoc Steering Committee itself holds a majority of the Senior Secured Notes. *See* Revised Verified Statement of the Ad Hoc Steering Committee Pursuant to Bankruptcy Rule 2019, ECF Doc. No. 60.

8. Pursuant to that certain Agreement of Resignation, Removal, Appointment and Acceptance, dated as of April 24, 2020, UMB became successor Trustee, US Collateral Agent, Depositary Bank, Registrar, Notes Custodian, Transfer Agent and Paying Agent to The Bank of New York Mellon under the Indenture and related financing documents. *See* Mack Decl. at ¶ 28.

9. As security for SCC's obligations under the Senior Secured Notes, pursuant to the Collateral Documents, the US Collateral Agent was granted a security interest in all or substantially all of the property and assets of the Stoneway Entities, including the Stoneway Entities' New York accounts ("**Collateral Accounts**") maintained in accordance with that certain Second Amended and Restated Depositary Agreement, dated November 9, 2017 by, among others, UMB Bank, N.A. in its capacity as Trustee, US Collateral Agent, and Depositary Bank, and the Stoneway Entities (as amended, "**Depositary Agreement**"). *Id*. at ¶¶ 29-31. The full list of Collateral Accounts is set out in Schedule 1 to the Depositary Agreement and includes the Issuer Revenue Account and Guarantor Revenue Accounts described below:

    (a) Issuer Revenue Account: SCC and the Canadian Limited Partnerships deposit into the Issuer Revenue Account, upon receipt, all operating revenues (including all payments

received by SCC under the Equipment Leases), proceeds from asset sales, and insurance proceeds, among other things. Amounts on deposit in the Issuer Revenue Account are applied by the US Collateral Agent in accordance with procedures and on the timelines set forth in the Depositary Agreement; and

(b)    Guarantor Revenue Account: On a monthly basis, each of the Argentinian Stoneway Entities are required to transfer the excess balance of their individual onshore accounts into their respective Guarantor Revenue Accounts.

10.    The Stoneway Entities' cash management system operates pursuant to the terms of the Depositary Agreement and the collateral trust agreement dated as of February 15, 2017 (as amended, "**Guarantee Trust Agreement**") between the Stoneway Entities and TMF Trust Company (Argentina) S.A., as trustee ("**Argentinian Trustee**"). *Id.* at ¶ 29.

11.    The Argentinian Stoneway Entities maintain several accounts, comprised of the Onshore Construction Accounts, the Onshore Revenue Accounts, the Onshore Trustee Account/Cuentas Fiduciarias, and the Onshore Custody Account (together, and as so defined in the Depositary Agreement, the "**Onshore Accounts**"). The recitals to the Depositary Agreement note that the Onshore Accounts are located in Argentina.

12.    The Onshore Revenue Accounts are pledged to the Argentinian Trustee for the benefit of the Secured Parties (as defined below), whose rights with respect to these accounts are governed by a collateral agency and intercreditor agreement dated as of November 9, 2017 (as amended, "**Intercreditor Agreement**") among the Stoneway Entities, UMB, as Trustee, and the Revolving Lenders. *Id.* at ¶ 33.

13. All revenues earned through the PPAs are deposited in the Onshore Revenue Accounts and, when Equipment Lease payments are made, the applicable Argentinian Stoneway Entity makes payment from the applicable Onshore Revenue Account into the Issuer Revenue Account held by SCC. *Id*. at ¶ 30; 341 Meeting of Creditors Tr. at 15:3-10, 15:23-16:2.[4]

14. The Debtors have been experiencing severe liquidity issues since at least early 2020. The Debtors defaulted from the non-payment of principal and interest due to the Senior Secured Noteholders on March 1, 2020 and anticipated further defaults under the Indenture ("**March 2020 Defaults**"). *See* Mack Decl. at ¶¶ 39-41.

15. During an event of default, the Required Secured Parties (as defined under the Intercreditor Agreement) have the power to direct the Argentinian Trustee to exercise control over the Onshore Revenue Accounts. Following the March 2020 Defaults and certain filings made in early March 2020 under Argentinian insolvency law by the Stoneway Entities and the Argentinian Stoneway Entities, the Required Secured Parties directed the Argentinian Trustee to continue to permit SCC and the Subsidiary Guarantors to maintain control of the Onshore Revenue Accounts, and the applicable Stoneway Entities accordingly remain in control of the Onshore Revenue Accounts as of this date. *Id.* at ¶¶ 29-31.

16. On or about April 24, 2020, the beneficial owners of, or investment managers to beneficial owners of over 65% (in the aggregate) in principal amount of the Outstanding Notes (as defined under the Indenture), constituting the Required Secured Parties, directed the US Collateral Agent, *inter alia*, to enforce their rights (the "**April 2020 Enforcement**") against SCC and the Canadian Limited Partnerships and transfer all amounts on deposit in the Collateral Accounts, including the Issuer

---

[4] A copy of the 341 Meeting of Creditors Transcript is attached as **Exhibit B**.

Revenue Account, to the Omnibus Account. Accordingly, UMB complied with the April 2020 Enforcement, established the Omnibus Account, and transferred all amounts on deposit in the Collateral Accounts to the Omnibus Account. *See* Declaration of Gavin Wilkinson, Senior Vice President, UMB Bank, N.A., in Support of Joint Motion for Relief from the Automatic Stay dated May 21, 2021 ("**Wilkinson Declaration**"), ¶¶ 2–4.[5]

17. Since the April 2020 Enforcement, payments by the Argentinian Stoneway Entities from the Onshore Accounts to the Collateral Accounts have been sporadic. Any such amounts that have been transferred into the Collateral Accounts have been moved to the Omnibus Account. No payments have been made by the Argentinian Stoneway Entities into any of the Collateral Accounts since December 2020. The Collateral Accounts now hold only de minimis amounts. At no time since the April 2020 Enforcement have the Debtors contested the establishment of the Omnibus Account, attempted to exercise control over it, or asserted any withdrawal rights with respect to it. *Id.* at ¶¶ 5–6.

18. Since the April 2020 Enforcement to date, approximately $61 million has been deposited into the Omnibus Account. *Id.* at ¶ 7. Funds in the Omnibus Account have been periodically transferred back into the Issuer Revenue Account to pay the fees of the Indenture Trustee/US Collateral Agent and its advisors. *Id.* Funds have also been deposited back into the Issuer Revenue Account, with the consent of the Required Secured Parties, to pay the fees and expenses of SCC's advisors and to make various working capital payments for SCC, including payments under certain operation and maintenance agreements. *Id.* at ¶ 8. As of the Petition Date, there was approximately $31 million in the Omnibus Account. *Id.* at ¶ 9. No amounts have been transferred out of the Omnibus Account since the Petition Date. *Id.* The Debtors have represented that funds that are the proceeds or offspring of collateral will

---

[5] A copy of the Wilkinson Declaration is attached as **Exhibit C**.

continue to be directed into the Omnibus Account. *See* 341 Meeting of Creditors Tr. at 14:25-15:10, 15:23-16:2.

## Jurisdiction and Venue

19. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate for the relief requested herein is Section 362(d)(2) of the Bankruptcy Code.

## Relief Requested

20. By this Motion, pursuant to Section 362(d)(2) of the Bankruptcy Code, the Indenture Trustee/US Collateral Agent and the Ad Hoc Steering Committee respectfully request entry of an order granting limited relief from the automatic stay in the above-captioned proceedings for the purpose of allowing the Indenture Trustee/US Collateral Agent and the Ad Hoc Steering Committee to withdraw funds from the Omnibus Account for all purposes permitted by the Indenture and the Collateral Documents. A proposed form of order is attached as **Exhibit A**.

## Basis for Relief

21. Relief from the automatic stay, to the extent necessary, is warranted because the amounts held in the Omnibus Account do not constitute property of the Debtors' estates. Alternatively, relief from the automatic stay is warranted pursuant to Section 362(d)(2) because the Debtors do not have

9

equity in the Omnibus Account and the Omnibus Account is not necessary to an effective reorganization for the Debtors.

22. The Omnibus Account is not estate property under New York law, which states that funds in a bank account are presumed to be owned by the named holder of the account. *See EM Ltd. V. Republic of Argentina*, 473 F.3d 463, 473-74 (2d Cir. 2007); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F. 3d 70, 86 (2d Cir. 2002) ("When a party holds funds in a bank account, possession is established, and the presumption of ownership follows."). Funds are held in the Omnibus Account in the name of the US Collateral Agent for the benefit of the Senior Secured Noteholders, not in the name of the Debtors, thus creating the presumption that the funds are not property of the estate. Further, the Collateral Documents conclusively establish that the US Collateral Agent was granted a security interest in the Collateral Accounts. These accounts were then transferred to the Omnibus Account, an account controlled by and in the name of the US Collateral Agent, pursuant to the April 2020 Enforcement. The Debtors have acquiesced to the US Collateral Agent's enforcement actions over the Collateral Accounts and have never taken any actions to challenge the US Collateral Agent's control over the Omnibus Account. The fact that the U.S. Collateral Agent, as instructed by the majority holders, agreed to release certain funds from the Omnibus Account in no way establishes that these were accounts belonging to the Debtors nor undermines the clear transition of title, which makes clear that following the enforcement action these were Trustee funds for the benefit of the Senior Secured Noteholders. It would be entirely inconsistent for the Debtors to now, over a year after the April 2020 Enforcement, claim that they are the true owners of these funds.

23. Section 362(d)(2) permits the Court to "grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay" with respect to the Omnibus Account "if .

. . (A) the debtor does not have an equity in [the Omnibus Account]; and (B) [the Omnibus Account] is not necessary to an effective reorganization." "For purposes of Section 362(d)(2), 'equity' is the difference between the value of the amounts held in the [Omnibus Account] and the total of the claims which it secures." *In re Diplomat Elecs. Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988). Thus, the Debtors lack equity in the Omnibus Account if "the creditor is undersecured." *U.S. Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988); *see also In re Pegasus Agency, Inc.*, 101 F.3d 882, 886 (2d Cir. 1996) (noting that the debtor had no residual equity in the property "because the amount Pegasus owes on its mortgage is greater than the value of the Davenport Property").

24. Here, the Court must conclude that the Debtors have no equity in the Omnibus Account. The Debtors' obligations under the Indenture far exceed the cash held in the Omnibus Account. It is undisputed that the outstanding principal amount of the Senior Secured Notes as of the Petition Date was approximately $589 million. Cash held in the Omnibus Account as of the Petition Date was (and remains) $31 million. Therefore, section 362(d)(2)(A) is satisfied because the Debtors have no equity in the Omnibus Account.

25. Once lack of equity is shown, the burden shifts to the Debtors to establish that the Omnibus Account is necessary for an effective reorganization. *Timbers of Inwood Forest*, 484 U.S. at 375; *see also In re YL West 87th Holdings I LLC*, 423 B.R. 421, 428 (Bankr. S.D.N.Y. 2010) ("the party opposing relief from stay has the burden of proof on all issues other than the debtor's equity in the property"). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, [the Omnibus Account] will be needed for it; but that the [Omnibus Account] is essential for an effective reorganization *that is in prospect*." *Timbers of Inwood Forest*, 484 U.S. at 375–76. The Supreme Court explained "that there must be 'a reasonable possibility of a successful reorganization

11

within a reasonable time.'" *Id.* at 376 (quoting the *en banc* decision of the Fifth Circuit in *Timbers of Inwood Forest*, 808 F.2d 363, 370–71 (5th Cir. 1987)). Thus, the "lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief." *Id.*; *see also In re Pegasus*, 101 F.3d at 887 (holding debtor "utterly failed to meet its burden" under section 362(d)(2)(B) where "the assumptions and projections proffered in support of [its] reorganization plan do not pass the straight-face test"); *In re Kent Terminal Corp.*, 116 B.R. 555, 562 (Bankr. S.D.N.Y. 1994) ("It goes without saying that an effective reorganization cannot be based solely on speculation"); *In re New Era Co.*, 125 B.R. 725, 730 (S.D.N.Y. 1991) (holding that "mere dreams" of reorganization cannot sustain the automatic stay). Moreover, "even during the exclusive period lack of a realistic prospect of effective reorganization requires relief from the automatic stay." *Diplomat Elecs.*, 82 B.R. at 693.

26.  The Debtors cannot meet their burden to establish a non-speculative, realistic possibility of successful reorganization in a reasonable time and that the Omnibus Account is an essential component of any such plan. The Chapter 11 Cases were filed with little effort or foresight on the part of the Debtors. The Debtors filed only a threadbare set of pleadings inconsistent with a legitimate desire to lay the foundation to reorganize. The Debtors' First Day Motions only included a joint administration motion, a motion to approve notice procedures and to extend the deadline to file schedules and statements, a motion enforcing and restating the automatic stay, and an application to retain Prime Clerk LLC as noticing agent, which motions were heard by this Court on April 9, 2021 at 11:00 a.m. (the "<u>First Day Hearing</u>"). The Debtors acknowledged during the First Day Hearing that the First Day Motions were "bare bones." *See* First Day Hearing Tr., ECF Doc. No. 48 at 17:16-17.[6]

---

[6]  A copy of the First Day Hearing Transcript is attached as **Exhibit D**.

27.  Indeed, the Debtors conceded in their First Day Motions that they commenced these Chapter 11 Cases to take advantage of the automatic stay, maintain the status quo pending resolution of various issues in Argentina, and prevent the Indenture Trustee/US Collateral Agent and the Argentinian Trustee from exercising remedies that, in their view, would be "detrimental or value destructive to the Company". See Mack Decl. at ¶ 16. The Debtors have not filed no other motions seeking substantive relief since the First Day Hearing and have yet to seek any form of debtor in possession financing that would allow them to operate pending the negotiation and implementation of a plan of reorganization, despite acknowledging that they have no access to cash[7] and that more than a month has passed since the cases were filed.

28.  The Debtors currently have no reasonable prospect for a successful reorganization in these Chapter 11 Cases warranting denial of the relief requested by the Motion. The Ad Hoc Steering Committee has requested that this Court abstain from hearing and dismiss these Chapter 11 Cases pursuant to Section 305(a) of the Bankruptcy Code in favor of established proceedings ("**CBCA Proceedings**") under the Canada Business Corporations Act or, in the alternative, in favor of a prospective renewed application in the Ontario Superior Court of Justice (Commercial List) for relief under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. c-36, as amended ("**Abstention Motion**"). See ECF Doc. No. 37. These proceedings are duplicative of the CBCA Proceedings. The Court has scheduled a hearing on the Abstention Motion for May 28, 2021, and discovery with respect to the Abstention Motion is underway.

29.  Finally, it does not appear that the Debtors have invoked the jurisdiction of this Court with any cognizable strategy for a viable restructuring under U.S. bankruptcy law. Any restructuring of

---

[7]  See 341 Meeting of Creditors Tr. at 20:5-20:17, 21:8-21:17.

13

the Senior Secured Notes proposed by the Debtors will require the support of the Senior Secured Noteholders. As of this time, Debtors have not provided the Ad Hoc Steering Committee with a proposed plan for any such restructuring.

### Notice

30. Although the Debtors have still not filed a proposed case management order in the Chapter 11 Cases, the Indenture Trustee/US Collateral Agent and the Ad Hoc Steering Committee are serving notice upon the U.S. Trustee, the Debtors, their proposed counsel, the Secured Parties under the Collateral Documents including, for the avoidance of doubt, the Argentine Stoneway Entities, and the Debtors' thirty largest creditors identified in a list filed with the Chapter 11 Petitions.

### No Prior Request

31. No previous request for the relief sought herein has been made by the Indenture Trustee/US Collateral Agent and the Ad Hoc Steering Committee to this Court or any other court.

### Conclusion

WHEREFORE, the Indenture Trustee/US Collateral Agent and the Ad Hoc Steering Committee respectfully request entry of an order granting the relief requested herein and such other and further relief as is just and appropriate.

Dated: May 21, 2021
New York, New York

        Respectfully Submitted,

        **PERKINS COIE LLP**

        BY: /s/ Tina N. Moss

        Tina N. Moss, Esq.
        Ronald T. Sarubbi, Esq.
        Lincoln Finkenberg, Esq.
        1155 Avenue of the Americas 22nd Floor
        New York, New York 10036
        (212) 262-6910
        *Attorneys for UMB Bank, N.A.,*
        *as Indenture Trustee and US Collateral Agent*

        **CLEARY GOTTLIEB STEEN & HAMILTON LLP**

        BY: /s/ Luke A. Barefoot, Esq.

        Richard J. Cooper, Esq.
        Luke A. Barefoot, Esq.
        Kristin Corbett, Esq.
        One Liberty Plaza
        New York, New York 10006
        (212) 225-2000
        *Attorneys for Ad Hoc Steering Committee*