# EXHIBIT D
## *First Day Hearing Transcript*

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 21-10646-jlg

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   STONEWAY CAPITAL, Ltd.,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  April 9, 2021

17                  11:17 AM

18

19

20

21  B E F O R E :

22  HON JAMES L. GARRITY, JR.

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO: UNKNOWN

Page 2

1    HEARING re 1)  Motion for Joint Administration

2    (Doc #2)

3

4    HEARING re 2)  MOTION FOR AN ORDER (I) AUTHORIZING THE

5    DEBTORS TO PREPARE A LIST OF CREDITORS IN ELECTRONIC FORMAT

6    IN LIEU OF MAILING MATRIX, (II) AUTHORIZING THE DEBTORS TO

7    FILE A CONSOLIDATED LIST OF THEIR 30 LARGEST UNSECURED

8    CREDITORS, (III) AUTHORIZING THE DEBTORS TO NOTICE CREDITORS

9    THROUGH THEIR CLAIMS AGENT, (IV) EXTENDING THE TIME TO FILE

10    SCHEDULES AND STATEMENTS AND (V) ESTABLISHING PROCEDURES FOR

11    NOTIFYING PARTIES OF THE COMMENCEMENT OF THESE CASES

12    (Doc #7)

13

14    HEARING re Motion to Appoint PRIME CLERK LLC as Claims and

15    Noticing Agent (Doc #8)

16

17    HEARING re ) MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO

18    (I) OPERATE THEIR BUSINESSES IN THE ORDINARY COURSE AND (II)

19    ORDERING IMPLEMENTATION OF THE AUTOMATIC STAY

20    (Doc #13)

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    SHEARMAN & STERLING LLP

4        Attorneys for the Debtor

5        599 Lexington Avenue

6        New York, NY 10022

7

8    BY:  FREDERIC SOSNICK (TELEPHONICALLY)

9        NED SCHODEK (TELEPHONICALLY)

10        JORDAN WISHNEW (TELEPHONICALLY)

11        JOHN GUELI (TELEPHONICALLY)

12

13    UNITED STATES DEPARTMENT OF JUSTICE

14        Attorneys for the U.S. Trustee

15        201 Varick Street, Suite 1006

16        New York, NY 10014

17

18    BY:  BRIAN MASUMOTO (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 4

1   CLEARY GOTTLIEB STEEN & HAMILTON LLP

2        Attorneys for Steering Committee of the Ad Hoc Group of

3        Noteholders

4        One Liberty Plaza

5        New York, NY 10006

6

7   BY:   LUKE BAREFOOT (TELEPHONICALLY)

8

9   DECHERT

10        Attorneys for Mezzanine Lenders

11        1095 Sixth Avenue

12        New York, NY 10036

13

14   BY:  SOLOMON NOH (TELEPHONICALLY)

15

16   ALSO PRESENT TELEPHONICALLY:

17

18   THOMAS KESSLER

19   BRENDAN O'NEILL

20   ANDREW HARMES

21   MICHAEL LIPSKY

22   MARC ZELINA

23   JOHN BRINGARDNER

24   MARIA CHUTCHIAN

25   AMY ODEN

```
 1    ALBERT TOGUT

 2    SHARA CORNELL

 3    PAUL GUNTHER

 4    ANA LUCIA HURTADO

 5    MIKE LEGGE

 6    GABRIEL SASSON

 7    BLAINE SCOTT

 8    BENJAMIN STEEL

 9    LEE WHIDDEN

10    RICHARD COOPER

11    JAMES JAKSA

12    MARIA KONYUKHOVA

13    FERMIN CARIDE

14    DAVID MACK

15    OMAR ALANIZ

16    BEN WERTKIN

17    BLAINE ADAMS

18    THOMAS ARAYA

19    CHRISTOPHER HORROCKS

20    RACHAEL WALSH

21

22

23

24

25
```

Page 6

1                  P R O C E E D I N G S

2              THE COURT:  All right, good morning.  It's Judge

3     Garrity, and the matter before us is in Stoneway Capital

4     Limited, case number 21-10646.  This is the, matters are

5     scheduled for a first day hearing in these cases.  Can I get

6     appearances, please?

7              MR. SOSNICK:  Good morning, Your Honor, Fred

8     Sosnick from Sherman & Sterling.  And with me, appearing

9     today, are Ned Schodek, Jordan Wishnew and John Gueli.

10             THE COURT:  All right, thank you.  Mr. Matsumoto I

11    see you're --

12             MR. MATSUMOTO:  Good morning, Your Honor, Brian

13    Matsumoto for the Office of the United States Trustee.

14             THE COURT:  Terrific.

15             MR. BAREFOOT:  Good morning, Your Honor, Luke

16    Barefoot from Cleary Gottlieb Steen & Hamilton, LLP, on

17    behalf of a steering committee of an ad hoc group of senior

18    secured noteholders.

19             THE COURT:  All right, Mr. Barefoot.

20             MR. NOH:  Good morning, Your Honor.  For the

21    record, Solomon Noh of Dechert LLP on behalf of the

22    mezzanine lenders.

23             THE COURT:  All right, Mr. Noh.  Okay.  Before we

24    get started, just two housekeeping matters.  Just to

25    disclose on the record, during the period of, I think it was

1   the beginning of 2000, maybe the end of '99, through either

2   2011 or '12, I was a member of the law firm of Shearman &

3   Sterling.  I overlapped, certainly, with Mr. Sosnick, and

4   there may be others involved in the case, with whom -- who

5   were my partners.  I have no relationship with the firm,

6   financial or otherwise, and have not had a relationship with

7   the firm for some time.

8          The second housekeeping matter is that I am

9   expecting a call on another matter that may come while this

10  hearing is going forward.  It won't be very long.  What I

11  propose to do is I will ring off, take the call, but ring

12  back on.  I don't expect that it will last more than five

13  minutes, ten minutes at tops.  And I would just ask that if

14  that happens, you just bear with me, so that we can continue

15  the hearing.

16         With that, Mr. Sosnick, why don't you get us

17  started, or your colleague, whoever it might be.

18         MR. SOSNICK:  Thank you, Your Honor, it will be

19  me.  For the record, Fred Sosnick from Shearman & Sterling

20  for the Debtors.  Your Honor, first of all, I wanted to

21  thank you for your time this morning, on short notice for a

22  first-day hearing.

23         We, Your Honor, filed an agenda, it's an amended

24  agenda, at docket number 27.  We intend to walk through the

25  agenda.  We note that the agenda does not include some

Page 8

1    motions filed on behalf of the Ad Hoc Group, which were not

2    included per the Court's notation on the docket; that they

3    be disregarded, and so they're not on there, in accordance

4    with that.

5            And we will, as I said, walk through it.  As

6    you'll see, the relief they're asking for is relatively

7    light.  And I don't think the actual relief itself should be

8    controversial.  But I think there is a lot that the Court

9    should be aware of.

10           And in addition, I would note -- although not an

11   agenda item, there was, at the request, which I'll mention

12   later on, at the request of the Court in Toronto, Ontario;

13   the Ontario Superior Court, Justice McEwen, ask that we

14   bring a matter to this Court's attention.  And he did so in

15   an endorsement that he issued yesterday, and we have filed

16   that at docket number 18.  There's no motion pending with

17   respect to it, but we did note that it has been filed and

18   draw the Court's attention to it.

19           THE COURT:  Thank you.  I have seen that and I

20   very much appreciate Justice McEwen's reaching out and

21   providing us with that endorsement, or asking me to file

22   that with the Court.

23           MR. SOSNICK:  Thank you.  So, Your Honor, I think,

24   to just sort of explain to you what the Debtors are, or how

25   we got here, and we, in that regard, in accordance with

1   local rule, we did -- it's local rule 1072 -- we did file at

2   docket number three, a declaration of David Mack.

3          Mr. Mack is either the sole, or one of two

4   directors of each of these entities, except for the entities

5   that are limited partnerships, where he is the director --

6   sole or one of two directors -- of the general partner of

7   those limited partnerships.

8          As set forth in that declaration, we have six

9   debtors in this case.  And Your Honor, I call your attention

10  -- because it might be the easiest way to describe this --

11  to Exhibit A, to Mr. Mack's declaration, which is page 38 on

12  the docket.

13         THE COURT:  Mr. Sosnick, bear with me just a

14  moment.

15         MR. SOSNICK:  Absolutely.

16         THE COURT:  All right, I apologize, Mr. Sosnick.

17  I've got it in front of me.  Please proceed.

18         MR. SOSNICK:  Thank you, Your Honor.  As depicted

19  on the organization chart, there are six debtors, one of

20  which is a British Virgin Islands Entity; the other five are

21  Canadian entities.  This line of companies itself is a group

22  of holding companies for what are the four Argentine

23  operating companies that are depicted at the bottom of the

24  organization chart.

25         Effectively, what this company does through the

1    Argentine operating companies, is they've built and operate

2    or have, in some degree, ready for operation, four power

3    plants located in Argentina.

4              And so, with that, Your Honor, just to kind of

5    walk you through a little bit of how these holding companies

6    got here, and what the cases are about, in March of 2020, so

7    a little over a year ago, there are, essentially, at that

8    time, three groups of creditors.  And, essentially, the

9    capital structure looked like that, and continues in one

10   way, shape or form, to look like that, and I'll get to a

11   fourth part of the capital structure.

12             But, effectively, there were approximately $686

13   million, or there are today, outstanding secured notes that

14   were issued by Stoneway Capital Corp.  And so, Stoneway

15   Capital Corp. is the entity, sort of in the middle of the

16   charts, depicted in blue.

17             Stoneway Capital Corp. issued those notes.  Those

18   notes are secured, and they're secured by, among other

19   things, assets of the operating companies in Argentina,

20   which has been pledged through an Argentine trust; as well

21   as assets that are located outside of Argentina.  There's an

22   offshore bank account through which Stoneway Capital Corp.,

23   which leases the turbines that are used at the operating

24   facilities, receives revenue here, offshore.  And then that

25   is an account that's been pledged to the indentured trustee

Page 11

1    here, in the United States.

2            There is also revolving credit facilities that are

3    issued by, or the obligors of those are directly the

4    Argentine entities are about US$26-ish million of those

5    revolving credit facilities.  They share in the same

6    guarantee and pledge package as the notes, so they share in

7    the same -- an interest in the trusts and the assets in

8    Argentina as well.

9            And then there was a mezz loan, or a term loan

10   facility, that was issued above this chart; the entity

11   depicted in green, and GRM Energy.  And GRM Energy issued

12   that, and then there are guarantors of those, of that

13   obligation.  And that's where things were in 2020.

14           As we mentioned -- and I think this will come up

15   at some later point as well -- there have been some

16   additional funding that was put in by those same term

17   lenders, in the form of unsecured notes that were largely

18   used to pay fees, as the offshore account, which is the sole

19   source of funds in the United States, was frozen by the

20   indentured trustee.  But those were not in existence at the

21   beginning of the story, in March 2020.

22           And in March of 2020, what happened was, due to a

23   number of events in Argentina, that I think are fairly well

24   publicized now -- they've gone through -- the country has

25   gone through a sort of second wave of its financial crisis.

1    And that led to problems with the ability of the operating

2    company to recognize a revenue on a timely basis.  The

3    principal source of revenue for those entities is power

4    that's sold under power purchase agreements to CAMMESA,

5    which is a private but -- it's a public entity,

6    nongovernmental public entity, that operates the grid in

7    Argentina.

8           And as a result of that disruption, it was

9    apparent that coming into March 2020, the company would not

10   be able to satisfy its obligations under its existing debt,

11   and went out and sought a standstill among its various

12   creditors.  And that, actually, was entered into and agreed

13   to in 2020.

14          While that standstill was in effect, the company

15   filed a concurso in Argentina, which was an event of default

16   under the various loan documents, as well as the standstill.

17   And that caused an exercise of remedies by the term lenders,

18   who came in and, among other things, replaced the boards all

19   the way up through the holding companies that are in

20   bankruptcy today, in front of this Court.

21          So, that --

22          THE COURT:  I'm sorry, pardon me.  I'm sorry, Mr.

23   Sosnick and I apologize for interrupting you.  You said the

24   companies filed concursos.  Which entities?  Were they the -

25   -?

Page 13

1              MR. SOSNICK:  The operating companies filed --

2              THE COURT:  Okay, I'm sorry, the op cos.  Okay.

3    So, anybody below Stoneway Energy LP?

4              MR. SOSNICK:  Correct.

5              THE COURT:  Your chart is for -- okay.  thank you.

6              MR. SOSNICK:  And as a result of that, there was

7    an exercise of remedies in 2020.  And as I mentioned, the

8    impact of that was that there was a change in directors

9    through the capital structure.

10             And Mr. Mack, who is the Declarant, who is an

11   independent director, a member of Drivetrain LLC and a

12   former restructuring lawyer and investor with over 20 years

13   of experience, was put in as the sole director.

14   Subsequently, a second director, Naveed Manzoor, who is a

15   Canadian citizen and is an independent director, also was

16   appointed a director of Stoneway Capital Corp. later in

17   2020, as part of the CBCA process; which I'll come to in a

18   second, and was the topic of Justice McEwen's submission

19   yesterday.

20             With that background, subsequent to all that

21   happening, the noteholders and the term lenders began to

22   discuss what to do next, and how to reach a consensual set

23   of -- consensual resolution.

24             I should mention, Your Honor, that when --

25   contemporaneous of Mr. Mack coming in, there was a change of

1    counsel, and we were brought in as part of that, when that

2    happened.

3              So, through that process, in 2020, the parties

4    negotiated -- really mostly amongst themselves, and the

5    company was a bystander that was, to those negotiations;

6    obviously, as things were required of the company, the

7    company considered them, and typically, as the parties

8    agreed, the company would agree with it.  And we were sort

9    of -- really as a way to -- as much as anything else,

10   conserve value -- we stood by and let the parties who are

11   stakeholders, negotiate and try to resolve things as they

12   could.

13             Ultimately, what that resulted in was a

14   restructuring support agreement among the Ad Hoc Group of

15   creditors -- of noteholders, rather -- the term loan lenders

16   and the company, that contemplated a consensual

17   restructuring through a CBCA proceeding.

18             A CBCA proceeding is a proceeding under the Canada

19   Business Corporations Act.  It is in contrast to a CCWA,

20   which Your Honor may be more familiar with.  A CBC -- and I

21   don't know Your Honor's familiarity with a CBCA -- but a

22   CBCA is a solvent plan of arrangement procedure, in Canada;

23   in contrast to the CCWA, which is a insolvency plenary

24   proceeding, in Canada.

25             So, the company, was proceeding under the CBCA to

1    implement this plan of arrangement.  A case was opened in

2    the court in Ontario, in the Ontario Superior Court.  Mr.

3    Justice McEwen was -- is the Court -- is the judge who is

4    presiding.  And the parties were on their way to

5    implementing that plan.  And one of the final steps of that

6    would be a meeting of noteholders to approve the plan.  And

7    through a series of different events, ultimately, that

8    meeting was postponed several times.

9              And as that was pending in late -- sorry, in early

10   December -- a decision was issued by the Argentine Supreme

11   Court, with respect to one of the power plants owned by the

12   Debtors, the Mateo power plant.

13             And that decision reversed the Court of Appeals'

14   decision that had previously overturned an injunction that

15   was prohibiting the Mateo plant's completion due to noise

16   pollution concerns.

17             And the impact of that decision was, and is still,

18   somewhat unknown because it was reversing a decision that,

19   basically, if you followed through the chain of events, in

20   theory, it would reinstate an injunction to stop the

21   completion of a power plant that's already been completed.

22   And so, it's quite an interesting set of events or process

23   in Argentina.

24             And ultimately, that -- because it was one of the

25   four power plants -- did disrupt the ability to complete the

1    plan of arrangement at that time.  And as a result of the

2    uncertainty, the meeting of creditors was suspended

3    indefinitely as of December 22.

4           During that time, or following December 22 into

5    the early part of this year, largely, the time was spent

6    focusing on what happens in Argentina.  And ultimately, the

7    Appellate Court issued a decision saying it was going to

8    remand back to the trial court, which is where it sits

9    today, to decide what's going on.

10          But as all that was happening, the parties agreed,

11   on March 15, to extend the restructuring support agreement.

12   And the way the CBCA and the RSA interrelate, is that the

13   CBCA was opened to allow the RSA, which was then inviting

14   the plans, to be -- in effect, there was a stay that does

15   accompany that proceeding, which expires, essentially, upon

16   the expiration of the RSA.  It's actually five days after

17   that, but it expires at the expiration of the RSA going

18   away; because essentially, that's when the parties cease to

19   be pursuing the consensual arrangement.

20          So, as I mentioned, you know, that happened, that

21   was extended in March.  Shortly after it was extended, this

22   Appellate decision came down remanding the Court.  And the

23   looming expiration of the RSA under this amended extension,

24   was March 31.

25          And so, March 31 came and it was looking as if

1    there would not be an extension of the RSA.  In fact, the

2    RSA had required that it be extended three business days

3    prior, which would have been the Friday before March 31.

4    And that did not happen.  But the parties continued to

5    negotiate to see if there was a resolution of the issues and

6    a way forward.  Ultimately, that resulted in a standstill,

7    informally, that expired at 11:59 on April 7.

8              And so, to fast forward a little bit, what's

9    happened since that time, or really, what happened at that

10   time, was in order to prevent creditor action, when it

11   became apparent that the standstill was not going to be

12   extended and to maintain this status quo, late in the

13   evening of April 7; which is, you know, is two days ago, so

14   that evening, the Board met and decided to commence these

15   proceedings as a way to maintain the status quo.

16             As Your Honor, I think, can see, these were sort

17   of bare bones filings without a lot of additional motions.

18   We are still working out how to continue to finance these

19   entities during chapter 11.  I'd note, for the record and

20   for the Court's benefit, that because they are holding

21   companies, there are no day-to-day expenses.  The expenses

22   we'd have to figure out how to fund are largely the

23   administrative expenses, professional fees, US Trustee fees

24   and the like.  But we are working to do that.

25             But the biggest hope of the company had been to

1    not get to a point where we were in any proceeding anywhere

2    in the world.  But when that became apparent, we did take

3    that action.

4            And what we know, in hindsight, Your Honor, which

5    is, I think, a lead up to just help put in context Justice

6    McEwen's statement -- or his endorsement, rather -- is what

7    we do know is that the decision to file was well founded.

8    Because shortly after we filed -- and actually, what we

9    believe was with -- and we believe it's based on statements

10    that were made at yesterday's hearing in front of the

11    Ontario Court -- which does not transcribe, so I'll just

12    tell you what I believe and others could say what they

13    believe they said or otherwise or …

14            But we believe, with direct knowledge, of the

15    automatic stay, going into effect in these cases, we believe

16    the response of the -- well, we know the response was the

17    indentured trustee filed involuntary CCAA proceedings

18    against one of the entities.  And so -- that was Stoneway

19    Capital Corp., the issuer of the notes, and the sole entity

20    that was subject to the CBCA.  They filed that late on

21    Wednesday night after we -- you know, they saw the -- we

22    believe they saw -- certainly -- I think it's indisputable

23    that they filed after these were commenced.  As I said, I

24    believe it was with knowledge, and I think they conceded

25    that in Court yesterday, but certainly it was afterwards.

Page 19

1    They commended the CCAA involuntarily.  They then -- we

2    have, we sent a letter reminding them about the stay.  We've

3    asked that it be withdrawn.  To date, that has not been

4    withdrawn.  We may, in fact, come back to the Court very

5    shortly to seek specific relief with that.  But that CCAA

6    motion is still pending, and is mentioned in Justice

7    McEwen's endorsement.

8              And then, shortly after that, early yesterday

9    morning, about, I think it was about three o'clock yesterday

10   morning, the Ad Hoc Group filed a motion seeking a protocol

11   to be put into effect between the US Court, Your Honor's

12   Court, and the Canadian Court, under the Canadian CBCA

13   Court.

14             There was a hearing yesterday.  We opposed, the

15   Debtors opposed that motion.  And Your Honor, it's not

16   because we don't think that under appropriate circumstances

17   a protocol makes sense.  And appropriate circumstances are

18   when you have two plenary bankruptcy proceedings and you

19   have to sort out which Court is going to handle what.

20             In the future, the Argentine operating companies,

21   and maybe even some of the entities that are Debtors that

22   have operations in Argentina, may elect to do something in

23   Argentina.  At that point, if necessary, a protocol might

24   make sense.  If we decided to bring an insolvency proceeding

25   someplace else voluntarily -- again, I think a protocol

1    would make sense, and there are plenty of examples where

2    that happens; this is just not one of them.

3            As I mentioned, only one of the Debtors here is a

4    debtor, so it's not even clear what that protocol would be.

5    But even more importantly, the CBCA is not a plenary

6    insolvency proceeding, as is chapter 11.  It's designed for

7    something completely different.  We know it's something

8    completely different.  Because even if Your Honor were not

9    familiar with the CCAA, which I believe Your Honor may be

10   based on your prior cases in your Court, the most obvious

11   event, to the fact that it's two different proceedings is

12   the Ad Hoc Group itself brought this CCAA and didn't

13   actually move to do anything in the CBCA until after they

14   had, effectively, moved to bring this into a CCAA.

15           And so, I think Your Honor, again, just to take

16   you to -- as I noted, we filed the endorsement in which, you

17   know, Justice McEwen says he thinks it would be premature to

18   grant relief sought, and may be unnecessary or untimely, or

19   not appropriate in any circumstance -- it says that on page

20   two.  You know, he described, at yesterday's hearing, the

21   CBCA as a -- it was his quote, "A lame, if not a dead duck,"

22   because of the type of proceeding it is.

23           So, we are not, at this point, moving ourselves.

24   We understand a motion has been filed by the Ad Hoc Group

25   seeking a protocol.  We think it's very premature.  It would

1    not be -- to us, make any sense to have a protocol with

2    respect to a CBCA proceeding, and a chapter 11 proceeding.

3    They're just two totally different types of proceedings.

4              And you know, of course, we do not have a problem,

5    Your Honor, with taking Justice McEwen up on his own

6    statement that he'd be willing to discuss things informally

7    with Your Honor.  We have no problem with that, but we just

8    don't think we're at the point where, because of the nature

9    of the proceeding, the protocol makes sense.  If that

10   changes, we will certainly move.  And we know there's a

11   pending motion, and we'll address that in further detail at

12   the appropriate time when that motion is heard.

13             THE COURT:  All right.

14             MR. SOSNICK:  With that, Your Honor, if Your Honor

15   didn't have -- let me pause and ask Your Honor if you have

16   additional questions.

17             THE COURT:  No, not at this point, I do not, thank

18   you.

19             MR. SOSNICK:  So with that, Your Honor, I think

20   what I propose to do is turn to the matters that are

21   scheduled to be heard, which are the four initial motions

22   that we filed in their Items 1 through 4 on the agenda, as

23   support for the purposes of providing support.  To the

24   extent that support is actually even necessary for the four

25   motions we have filed, and I think given their routine

1   nature, I'm not sure you actually need support.  But for the

2   purposes of support of those four motions, I would ask to

3   move Mr. Mack's declaration into evidence.  Mr. Mack is

4   available on this call, I believe live, I hope.  I'm looking

5   at the -- yes, on the Court Solutions.  And with that, Your

6   Honor, move it in for the purposes of considering the four

7   motions before Your Honor.

8           THE COURT:  All right, does anyone object to my

9   admitting Mr. Mack's declaration, which is at ECF number 3?

10  It's his direct testimony, solely as it relates to the four

11  matters that are before the Court this morning?

12          There being no response, Mr. Mack's testimony is

13  in.  It's his direct testimony.  And again, we're limiting

14  it to the very ministerial matters that are before the Court

15  this morning.

16          MR. SOSNICK:  Okay.  Thank you, Your Honor.  With

17  that, I would propose, if it's acceptable to Your Honor, to

18  turn the podium, or the virtual podium, over to Mr. Jordan

19  Wishnew, who is a colleague of mine, who will go through the

20  first two items on the agenda.  And then my partner, Ned

21  Schodek, will cover the last two items on the agenda.

22          THE COURT:  All right.  That's fine.

23          MR. BAREFOOT:  Your Honor, this is Luke Barefoot -

24  -

25          THE COURT:  I'm sorry -- yes, Mr. Barefoot.

1           MR. BAREFOOT:  I apologize for interrupting, Your

2      Honor.  We do have some observations and remarks that we

3      would like to make.  They're more relevant to the factual

4      background and the next steps that Mr. Sosnick outlined, and

5      they are to any of the - whether you want to call it bare

6      bones or procedural or et cetera -- relief that the Debtors

7      do have up today.  I'll take Your Honor's direction on

8      whether you'd prefer to hear those now or address them

9      afterwards, as well as discuss next steps with respect to

10     the motions that the ad hoc group has filed.

11          THE COURT:  Yes.  Thank you, Mr. Barefoot.  I

12     think it makes sense.  Let's deal with the motions and then

13     we'll turn, and then I would be happy to hear from you.  And

14     as we talk and as you are making your presentation, we can

15     then talk about the matters that you would like to get

16     before the Court and --

17          MR. BAREFOOT:  Very good.  Thank you, Your Honor.

18          THE COURT:  Terrific.  Thank you very much.  All

19     right, Mr. Wishnew?

20          MR. WISHNEW:  Thank you very much, Your Honor.

21     Good morning.  Jordan Wishnew, from Shearman & Sterling, for

22     Stoneway Capital and its affiliate Debtors.

23          Your Honor, I'll be handling Items 1 and 2 under I

24     on the second amended agenda, which appears at Docket Number

25     27.  The first item is a joint administration motion.  That

1    was docketed at ECF Number 2 in the case 21-10646.

2            Your Honor, this is a fairly great forward motion.

3    The Debtors are asking the Court's permission to

4    procedurally consolidate these six cases and maintain one

5    docket for all of the cases.

6            As Your Honor may be aware, earlier this morning

7    we docketed a slightly modified form of order at Docket

8    Number 25.  The changes there are to update the captions and

9    modify the wording in Paragraph 7.

10           This specific modification was made at the request

11   of the U.S. Trustee's office and simply just modifies the

12   text slightly to read the Debtors may file their monthly

13   operating reports required by the operating guidelines and

14   reporting requirements for Debtors in Possession and

15   Trustees, issued by the U.S. Trustee on a consolidating

16   basis.  We had drafted it originally to say consolidated,

17   but shall track and break out disbursements on a debtor-by-

18   debtor basis.  Other than that, the order is in the same

19   form as it was when we filed the first day motion.

20           THE COURT:  All right.  Thank you.  Mr. --

21           MR. WISHNEW:  Unless --

22           THE COURT:  I'm sorry.  Go ahead, Mr. Wishnew.  I

23   apologize for interrupting you.

24           MR. WISHNEW:  Oh, no, no.  That was the conclusion

25   of my presentation, Your Honor.

1          THE COURT:  All right.  Thank you.  Mr. Masumoto,

2    do you wish to be heard?

3          MR. MASUMOTO:  Good morning, Your Honor.  Brian

4    Masumoto, for the office of the United States Trustee.  Your

5    Honor, based upon the revised proposed order, we have no

6    objection to the request.

7          THE COURT:  All right.  Is there anyone else who'd

8    like to be heard?  Okay.  Thank you.

9          I've had an opportunity to review the motion.  The

10   motion is granted.  You'll submit the order, and we'll get

11   it entered.

12         MR. WISHNEW:  Excellent.  Thank you very much,

13   Your Honor.  Moving to the --

14         THE COURT:  Thank you.

15         MR. WISHNEW:  Moving to the second item, Your

16   Honor, the next item on the agenda is the Debtors' -- well,

17   we'll call it list and schedules motion, which can be found

18   at ECF Number 4 in the lead case and was re-docketed at ECF

19   7.

20         Your Honor, in this motion, the Debtors are

21   seeking the following release.  Specifically, to prepare a

22   list of creditors in electronic format; allowing us to file

23   a consolidated top-30 unsecured creditors list; allowing

24   Prime Clerk, our proposed claims and noticing agent, to

25   notice creditors; extending our time to file SOFAs and SOLS

1    by 30 days; and establishing procedures to notify parties of

2    the commencement of the case.

3              Your Honor, prior to today's hearing, we had an

4    opportunity to review this motion with the U.S. Trustee's

5    office.  It's our understanding that they had no comments.

6    We are in the process of setting the date of the 341(A)

7    meeting of creditors, and once that is set we'll coordinate

8    mailing and publication of that notice with Prime Clerk.

9              And unless Your Honor has any questions, we'd ask

10   for the Court's approval of this motion, pursuant to the

11   proposed form of order, which has been docketed at Docket

12   Number 24.

13             THE COURT:  No, I don't have any questions, Mr.

14   Wishnew.  Thank you.  Mr. Masumoto?

15             MR. MASUMOTO:  Brian Masumoto, for the Office of

16   the United States Trustee.  No objection, Your Honor.

17             THE COURT:  Does anyone else wish to be heard?

18             I have reviewed the motion and find good cause for

19   the relief requested.  The motion is granted.  You'll submit

20   the order, please.

21             MR. WISHNEW:  Thank you.  Thank you very much,

22   Your Honor.  I will turn the virtual podium of two my

23   colleague, Ned Schodek.

24             THE COURT:  Yes.  Mr. Schodek?

25             MR. SCHODEK:  Good afternoon, Your Honor.  This is

Page 27

1    Ned Schodek, from Shearman & Sterling, proposed counsel for

2    the Debtors.

3            With Your Honor's permission, I'll proceed to

4    Agenda Item 3, the Debtors' claims agent retention motion,

5    which is Docket Number 8.

6            THE COURT:  Thank you.  Please proceed.

7            MR. SCHODEK:  Your Honor, the Debtors seek to

8    retain Prime Clerk as claims and noticing agent, pursuant to

9    section 156(c), and importantly, that's the only relief we

10   are seeking with respect to Prime Clerk today.  We're not

11   moving under Section 327 to retain them.

12           The application is supported by the declaration of

13   Benjamin Steele, who is the Vice President at Prime Clerk.

14   Mr. Steele has made himself available to the Court today to

15   answer any questions, and his declaration is attached to the

16   motion as Exhibit B.

17           And unless there are any objections, Your Honor,

18   we would request that the Steele declaration be admitted

19   into evidence at this time.

20           THE COURT:  Anyone objection to my admitting the

21   Steele declaration into evidence as Mr. Steele's direct

22   testimony in this matter?  Being no response, your request

23   is granted.

24           (Declaration of Benjamin Steel of Prime Clerk

25   Admitted Into Evidence)

1          MR. SCHODEK:  Thank you, Your Honor.  Your Honor,

2     I'll keep this shorter because Prime Clerk's qualifications

3     and experience speak for themselves, but wanted to note that

4     before hiring Prime Clerk, the Debtors did make sure to

5     consider a number of proposals from Prime Clerk's

6     competitors.  And after reviewing those proposals, the

7     Debtors determined that Prime Clerk had a competitive and

8     reasonable rates, and that it was well-suited for this

9     engagement, given that it has handled large cases with an

10    international element.

11          Your Honor, this motion was sent to the U.S.

12    Trustee.  And based on the U.S. Trustee office's feedback,

13    we made one minor change to the proposed form of order,

14    which we confirm Prime Court is okay with.  And that change

15    is reflected at Docket Number 26.

16          There's changed pages in the back, but basically

17    all we did was add a new paragraph 38, to the effect that

18    the limitation of liability section and the engagement

19    letter is deemed to be of no force and effect with respect

20    to the services to be provided pursuant to the order.

21          So, unless Your Honor has any questions or points

22    of clarification, we would request entry of this order on a

23    final basis.

24          THE COURT:  I do not have any questions.  Mr.

25    Masumoto, do you wish to be heard?

1          MR. MASUMOTO:  No, Your Honor.  Based upon the

2    revised proposed order, we have no objections.

3          THE COURT:  All right.  I've reviewed the motion,

4    as well as the document submitted in support of the motion,

5    and grant the motion to the extent that the Debtor is

6    seeking to appoint Prime Clerk as the claims and noticing

7    agent.  So to that extent, the motion is granted.  You'll

8    submit the order, please, Mr. Schodek.

9          MR. SCHODEK:  Thank you, Your Honor.

10          THE COURT:  Thank you.

11          MR. SCHODEK:  Your Honor, moving on, the next item

12    on the agenda is Item 4, Docket Number 13.  This is the

13    motion for enforcement of the automatic stay.  With Your

14    Honor's permission, I'll proceed to that.

15          THE COURT:  That's fine.  Thank you.

16          MR. SCHODEK:  Thank you, Your Honor.

17          Your Honor, this is a standard motion for an

18    automatic stay comfort order.  And as Your Honor is well

19    aware, these are comfort orders and they are very commonly

20    used in cases where the debtors have a substantial

21    international presence like the Debtors here, who, as Mr.

22    Sosnick described, are holding companies.  They control

23    operating subsidiaries that operate in the Republic of

24    Argentina.

25          And the comfort order we're requesting is

1    necessary in that other courts and creditors are often used

2    to seeing court orders, and it's sometimes difficult to

3    explain to them the provisions of the automatic stay, the

4    ipso facto provisions, or the antidiscrimination provisions

5    that are embedded in the Bankruptcy Code, and that we're all

6    more familiar with.

7            So the proposed order and the motion is really

8    meant to just simply restate those provisions of the code so

9    that when we go into other jurisdictions and appear before

10   other courts, we're able to show an order.  And we tried to

11   follow the models that have been used regularly in cases in

12   the Southern District and strictly follow the provisions of

13   the code, and that's the intent of the order.

14           So, unless Your Honor has any questions or points

15   of clarification, we would respectfully request that you

16   enter the order enforcing the automatic stay.

17           THE COURT:  All right.  I do not have any

18   questions.  Mr. Masumoto, do you wish to be heard?

19           MR. MASUMOTO:  No objection, Your Honor.

20           THE COURT:  All right.  Does anyone else wish to

21   be heard?

22           All right, I've had an opportunity to review the

23   motion.  I grant the motion.  You will please submit the

24   order.

25           MR. SCHODEK:  Thank you, Your Honor.  Your Honor,

                                                        Page 31

1    that concludes what we had on the formal agenda.  So I guess

2    I'd turn the virtual podium over to Mr. Barefoot.

3              THE COURT:  Yes.  Mr. Barefoot?

4              MR. BAREFOOT:  Good morning.  Thank you, Your

5    Honor.  Luke Barefoot, of Cleary Gottlieb again, for the

6    Steering Committee of an ad hoc group of senior secured

7    noteholders.

8              Our clients hold more than 70 percent of the

9    outstanding senior secured notes and we filed our 2019

10   statement reflecting those holdings this morning at Docket

11   Item Number 28.

12             With your permission, Your Honor --

13             THE COURT:  I'm sorry.  Mr. Barefoot, I am getting

14   my call.  So --

15             MR. BAREFOOT:  Of course, Your Honor.

16             THE COURT:  I need to ring off.  Thank you.

17             (Recess)

18             THE COURT:  All right, good afternoon, it's Judge

19   Garrity, Mr. Barefoot I apologize for having to jump off

20   like that.  I think you were just starting to discuss the

21   status of things from your perspective.

22             MR. BAREFOOT:  Thank you very much, Your Honor,

23   and appreciate it.  Your Honor, again, for the record, Luke

24   Barefoot of Cleary Gottlieb for the steering committee.  The

25   steering committee holds a majority of the senior

Page 32

1    outstanding secured notes, and we filed our 2019 statement

2    this morning, which reflected those holdings, and that's

3    available at docket item number 28.  With your permission,

4    Your Honor, I'd like to just briefly be heard with respect

5    to the steering committee's position on the filing of these

6    cases, and then turn to discussing the motions that we have

7    filed and anticipate filing and take Your Honor's direction

8    on how to proceed on timing and procedures for those

9    motions?

10            THE COURT:  All right, that'd be fine, thank you.

11            MR. BAREFOOT:  Your Honor, our clients were quite

12   surprised and concerned that these Chapter 11 cases were

13   filed in the first place.  As Mr. Sosnick alluded to, there

14   is a very long and complicated procedural history here, but

15   there are a couple of salient points that I wanted to draw

16   the Court's attention to.  First, these proceedings were

17   filed in violation of a standstill agreement between the

18   parties that had not yet expired.  Second, these cases set

19   up a potentially conflicting set of proceedings, because the

20   debtors themselves in October 2020 commenced CBCA

21   proceedings before the Ontario Superior Court of Justice.

22            And while much of Mr. Sosnick's presentation

23   referred to those proceedings in the past tense, those

24   proceedings very much remain open and pending as

25   demonstrated by the order that Mr. Justice McEwen entered

1    yesterday.  Mr. Sosnick also described those proceedings as

2    not insolvency proceedings, but it's important to note that

3    CBCA's have been recognized as foreign name proceedings by

4    other Courts in Chapter 15.  Third, Your Honor, there was

5    disclosure in the first day declaration from Mr. Mack that's

6    been entered into evidence and that Mr. Sosnick alluded to

7    that the debtors accepted insider financing for Gramercy

8    Capital, their equity holder, shortly before the petition

9    date.

10            The steering committee believes that accepting

11   that insider financing itself without notice or consent from

12   the holders is likely a further violation of the

13   restructuring support agreement.  But in any event, the

14   steering committee is not aware of any efforts that the

15   debtors made to shop that financing package to ensure that

16   it was the best value for the estate, and certainly

17   themselves were not approached by the debtors to seek

18   alternative financing.  It's also notable, Your Honor, that

19   they accepted that financing shortly before the petition

20   rather than have it approved by this Court under the

21   strictures of section 364.

22            Forth, Your Honor, the boards of the -- direct --

23   Boards of Directors of the operating subsidiaries in

24   Argentina, whose members we believe were selected and

25   appointed by Gramercy, sought after the petitions were filed

1    to revoke powers of attorney concerning the shares of those

2    subsidiaries that were granted for the benefit of the

3    secured noteholders.  And finally, Your Honor, not only

4    these facts, but as has been noted, the very conduct and

5    scope of this hearing is not in keeping with the well

6    thought-out and legitimate desire to reorganize, but rather

7    with a last-minute litigation gambit to extract leverage.

8    The pleadings before Your Honor, which I think Mr. Sosnick

9    fairly described as light, are really the barest of

10   pleadings, and not consistent with the suite of relief you'd

11   expect from a debtor who had a legitimate desire to

12   reorganize.

13          There were only a handful of procedural motions

14   that were approved today, and notably not even a cash

15   management motion to allow the debtors to exercise their

16   accounts post-petition.  On that point, Your Honor, I don't

17   believe it's accurate to say that the only expenses of the

18   holding companies or paid out of their accounts are

19   professional fees as we are aware that there is a critical

20   trade vendor whose relationship is important to preserve

21   value, and who has traditionally been paid out of the

22   holding company debtors accounts.

23          For all these reasons and more, Your Honor, we do

24   intend to tee up what we think is the central issue,

25   (indiscernible) item in this case.  Whether these Canadian

Page 35

1    entities should be proceeding before Your Honor or whether

2    they should appropriately continue as they have for the past

3    six months before the Court in Canada.  Your Honor, I'd like

4    then to turn to the motions that we filed, which was a

5    motion to establish a briefing and discovery schedule on an

6    abstention motion, and a motion to implement a cross-border

7    protocol.  We certainly understand your chambers' direction

8    that those motions that were just filed late last evening

9    won't be proceeding today, but we do believe that it's in

10   everyone's interest to proceed expeditiously on the

11   contemplated motion for extension so that precious and

12   limited resources are not spent on proceeding in matters in

13   the wrong jurisdiction.

14            So, I think with that, Your Honor, we would invite

15   and accept Your Honor's direction with respect to scheduling

16   a hearing on those two motions.

17            THE COURT:  All right.  Mr. Sosnick, do you wish

18   to be heard on that?  Mr. Sosnick, actually, have you had an

19   opportunity to review the two motions, the motion -- let's

20   start with the abstention motions, or the request for the --

21   to schedule the abstention, the hearing on the abstention

22   motion.

23            MR. SOSNICK:  We have, Your Honor, had an ability

24   to look at that.  We have not, on the cross-border protocol

25   motion, there was an exhibit I think that was 2,000 pages

1    long that didn't upload and so we're not entirely sure what

2    is all in there, although I suspect it may have been stuff

3    that was filed in the CBCA, but in any event, Your Honor, we

4    have seen that, the scheduling motion.  The issue with the

5    scheduling motion, Your Honor, is that we don't know what

6    this motion really entails.  I understand Mr. Barefoot's

7    position that it's an abstention motion and it's abstaining

8    for something.  We, as Your Honor, I mentioned earlier, we

9    are of the view that, to the extent there is a CCAA

10   proceeding that you're being asked to abstain to -- in favor

11   of, it was a proceeding that was an involuntary, that was

12   commenced in violation of the automatic stay, and again, we

13   intend to seek redress for that, and -- if it is not

14   withdrawn.

15        And we'll have an opportunity, I think, to have

16   that discussion with this Court.  But we believe that it was

17   filed in not only actual disregard, but blatant disregard of

18   the automatic stay.  And so with that, the extent Your Honor

19   is being asked to abstain in favor of that proceeding, we

20   think it would be completely unwarranted and would suggest

21   in fact, that if it's not withdrawn, that we -- it would be

22   held in abeyance in order to preserve the -- preserve values

23   (indiscernible) stated, Mr. Barefoot pointed out is an

24   important consideration for us, pending resolution of our

25   motion, if that's where it has to go to, or adversary

1    proceeding to enforce the stay.  So --

2            THE COURT:  Mr. -- I'm sorry to interrupt you, Mr.

3    Sosnick.  Mr. Barefoot, are you add -- is the abstention

4    motion one in which what you're asking is that we abstain

5    from hearing what all of the cases in favor of the CCAA, or

6    what exactly is the request?

7            MR. BAREFOOT:  That's correct, Your Honor.

8            THE COURT:  I'm sorry, so the former?  So, their

9    involuntary CCAA proceedings have been commenced against

10   each of the debtors, is that right?

11           MR. BAREFOOT:  Your Honor, I'm not sure if each of

12   the debtors are formal applicants in that proceeding or if

13   they're sort of related parties.  I do want to clarify, with

14   respect to all the statements about the status of that

15   involuntary proceeding, that is not moving forward.  That

16   was -- at the hearing that was convened yesterday before

17   Justice McEwen, it was made very clear that we were not

18   proceeding to ask the Canadian Court to take any action with

19   respect to that involuntary petition because of the

20   commencement of these Chapter 11 cases.

21           THE COURT:  Right, but if you're asking us -- or

22   me to abstain from hearing these cases, it's to abstain in

23   favor of what?

24           MR. BAREFOOT:  It would be -- for right now, Your

25   Honor, the only proceeding this is formally open is the CBCA

Page 38

1    proceeding.  There is a pending motion in that proceeding to

2    -- using US terminology, to effectively convert it to a CCAA

3    proceeding.

4            THE COURT:  Right, and which entity or entities

5    are the subject of the CBCA?

6            MR. BAREFOOT:  Your Honor, I believe that the

7    petitioner in that case is Stoneway Corporation.  I -- I'm

8    not sure that I'm prepared right now to address in detail

9    the exact nuances of how the other entities are addressed in

10   that petition.  What I might suggest, understanding Mr.

11   Sosnick's position, is that we proceed as expeditiously as

12   possible to file our motions, and would request that we

13   promptly thereafter convene a hearing or a chambers

14   conference where we would have the opportunity to either

15   present a consensual briefing and discovery schedule or, in

16   the absence of agreement have one ordered by Your Honor.

17           THE COURT:  All right, Mr. Sosnick, any thoughts

18   on that?

19           MR. SOSNICK:  I -- Your Honor, and that's

20   acceptable to us, we would hope to meet and confer and agree

21   on a schedule, or if not, I'm sure Your Honor would make

22   yourself available in some capacity to assist in that, so we

23   are completely amendable to that.

24           THE COURT:  All right, that would be fine.  I

25   think Mr. Barefoot, that's a productive suggestion.  Now, on

1    the other matter, the protocol.  Now, were you folks -- were

2    your clients part of the hearings before Justice McEwen

3    yesterday?

4              MR. BAREFOOT:  Yes, Your Honor.  It was --

5              THE COURT:  And you -- and I'm sorry, would -- no,

6    I apologize, I interrupted you, but is it -- was it your

7    client that asked Justice McEwen to, I guess to implement

8    the cross-border procedures?

9              MR. BAREFOOT:  Your Honor, I believe it was

10   technically the notes trustee who was the Movant on that

11   application.  Our clients obviously share, you know, an

12   identity of interest with the Trustee.

13             THE COURT:  Right, okay.  All right.  So, look, I

14   -- I am not -- I'm not going to stop you from making the

15   motion.  I'm not sure that it's right that that relief is

16   right, but this -- at this point or that the issue, I guess

17   I should say is right for resolution.  What I would ask you

18   to do is confer with Mr. Sosnick.  I agree to a -- what you

19   folks could come up with on a briefing schedule, please

20   reach out to Ms. Rodriguez, let us know and we'll try to

21   implement whatever you folks resolve.  Mr. Masumoto, do you

22   need to be part of those discussions?

23             MR. MASUMOTO:  No, Your Honor, Brian Masumoto with

24   the (indiscernible) Trustee.  No, Your Honor, not at this

25   time.

1           THE COURT:  All right.  Does that work for you,

2    Mr. Barefoot?

3           MR. BAREFOOT:  Your Honor, that's fine.  I'll just

4    note for the record that you do have the endorsement from

5    Justice McEwen in which he invites Your Honor to the extent

6    you deem it appropriate to contact him, and of course --

7           THE COURT:  Yes.

8           MR. BAREFOOT:  -- the steering committee has no

9    objection whatsoever should Your Honor decide to do that,

10   either before or after entering a cross-border protocol.

11          THE COURT:  No, and I very much appreciate that,

12   Mr. Barefoot, and it very well may be that is some point

13   where I think that's worthwhile, or where Mr. Justice McEwen

14   thinks it's worthwhile reaching out to me, and I certainly

15   have no objection if he wanted to do that or thought it

16   appropriate to do that.  I have no problem with that.  I

17   just think it may be premature at this point, I may have a

18   better sense for it when you file the abstention motion, but

19   at this point, I note the -- you -- again, your point's well

20   taken as to what Justice McEwen indicated in the

21   endorsement, and as I said, if I think it's necessary I will

22   reach out to him.

23          MR. BAREFOOT:  Very good, Your Honor.

24          THE COURT:  Thank you.  So, you'll coordinate with

25   Mr. Sosnick and you guys will get back to us?

1          MR. BAREFOOT:  We will, Your Honor.

2          THE COURT:  All right, great.  Thank you very

3    much.  Is there anything else that we need to address this

4    afternoon in this matter?

5          THE COURT:  Okay, then --

6          MR. SOSNICK:  (overlapping conversation) record,

7    Your Honor.

8          THE COURT:  Sorry about that, Mr. Sosnick.  Okay.

9    Anyone else?  Great.  Thanks again, and get us the orders or

10   the forms of the orders, we'll review them, and get them

11   (indiscernible) as quickly as we can.  Thanks very much.

12         MR. BAREFOOT:  Thanks, Your Honor.

13         MR. SOSNICK:  Thank you, Your Honor.

14         THE COURT:  Okay.

15         (Whereupon these proceedings were concluded at

16   12:21 PM)

17

18

19

20

21

22

23

24

25

Page 42

1                         I N D E X

2

3                         RULINGS

4                                              Page        Line

5

6    Joint Administration Motion Granted        25          10

7    List and Schedules Motion Granted          26          19

8    Prime Clerk Motion Granted                 29          7

9    Automatic Stay Motion Granted              30          23

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 9, 2021

| **&** | **22** 16:3,4 | **able** 12:10 30:10 | **adversary** 36:25 |
|---|---|---|---|
| **&** 3:3 4:1 6:8,16 | **23** 42:9 | **absence** 38:16 | **affiliate** 23:22 |
| 7:2,19 23:21 27:1 | **24** 26:12 | **absolutely** 9:15 | **afternoon** 26:25 |
| | **25** 24:8 42:6 | **abstain** 36:10,19 | 31:18 41:4 |
| **1** | **26** 11:4 28:15 42:7 | 37:4,22,22 | **agenda** 7:23,24,25 |
| **1** 2:1 21:22 23:23 | **27** 7:24 23:25 | **abstaining** 36:7 | 7:25 8:11 21:22 |
| **10** 42:6 | **28** 31:11 32:3 | **abstention** 35:6 | 22:20,21 23:24 |
| **10004** 1:14 | **29** 42:8 | 35:20,21,21 36:7 | 25:16 27:4 29:12 |
| **10006** 4:5 | | 37:3 40:18 | 31:1 |
| **10014** 3:16 | **3** | **accept** 35:15 | **agent** 2:9,15 |
| **10022** 3:6 | **3** 22:9 27:4 | **acceptable** 22:17 | 25:24 27:4,8 29:7 |
| **10036** 4:12 | **30** 2:7 25:23 26:1 | 38:20 | **ago** 10:7 17:13 |
| **1006** 3:15 | 42:9 | **accepted** 33:7,19 | **agree** 14:8 38:20 |
| **1072** 9:1 | **300** 43:22 | **accepting** 33:10 | 39:18 |
| **1095** 4:11 | **31** 16:24,25 17:3 | **accompany** 16:15 | **agreed** 12:12 14:8 |
| **11** 17:19 20:6 21:2 | **327** 27:11 | **account** 10:22,25 | 16:10 |
| 32:12 37:20 | **330** 43:21 | 11:18 | **agreement** 14:14 |
| **11501** 43:23 | **341** 26:6 | **accounts** 34:16,18 | 16:11 32:17 33:13 |
| **11:17** 1:17 | **364** 33:21 | 34:22 | 38:16 |
| **11:59** 17:7 | **38** 9:11 28:17 | **accurate** 34:17 | **agreements** 12:4 |
| **12** 7:2 | | 43:4 | **ahead** 24:22 |
| **12:21** 41:16 | **4** | **act** 14:19 | **alaniz** 5:15 |
| **13** 2:20 29:12 | **4** 21:22 25:18 | **action** 17:10 18:3 | **albert** 5:1 |
| **15** 16:11 33:4 | 29:12 | 37:18 | **allow** 16:13 34:15 |
| **156** 27:9 | | **actual** 8:7 36:17 | **allowing** 25:22,23 |
| **18** 8:16 | **5** | **ad** 4:2 6:17 8:1 | **alluded** 32:13 |
| **19** 42:7 | **599** 3:5 | 14:14 19:10 20:12 | 33:6 |
| | | 20:24 23:10 31:6 | **alternative** 33:18 |
| **2** | **6** | **adams** 5:17 | **amendable** 38:23 |
| **2** 2:2,4 23:23 24:1 | **686** 10:12 | **add** 28:17 37:3 | **amended** 7:23 |
| **2,000** 35:25 | | **addition** 8:10 | 16:23 23:24 |
| **20** 13:12 | **7** | **additional** 11:16 | **amy** 4:25 |
| **2000** 7:1 | **7** 2:12 17:7,13 | 17:17 21:16 | **ana** 5:4 |
| **201** 3:15 | 24:9 25:19 42:8 | **address** 21:11 | **andrew** 4:20 |
| **2011** 7:2 | **70** 31:8 | 23:8 38:8 41:3 | **answer** 27:15 |
| **2019** 31:9 32:1 | | **addressed** 38:9 | **anticipate** 32:7 |
| **2020** 10:6 11:13 | **8** | **administration** | **antidiscrimination** |
| 11:21,22 12:9,13 | **8** 2:15 27:5 | 2:1 23:25 42:6 | 30:4 |
| 13:7,17 14:3 | | **administrative** | **anybody** 13:3 |
| 32:20 | **9** | 17:23 | **apologize** 9:16 |
| **2021** 1:16 43:25 | **9** 1:16 43:25 | **admitted** 27:18,25 | 12:23 23:1 24:23 |
| **21-10646** 1:3 6:4 | **99** 7:1 | **admitting** 22:9 | 31:19 39:6 |
| 24:1 | | 27:20 | |
| | **a** | | |
| | **abeyance** 36:22 | | |
| | **ability** 12:1 15:25 | | |
| | 35:23 | | |

**apparent** 12:9
  17:11 18:2
**appeals** 15:13
**appear** 30:9
**appearances** 6:6
**appearing** 6:8
**appears** 23:24
**appellate** 16:7,22
**applicants** 37:12
**application** 27:12
  39:11
**appoint** 2:14 29:6
**appointed** 13:16
  33:25
**appreciate** 8:20
  31:23 40:11
**approached** 33:17
**appropriate**
  19:16,17 20:19
  21:12 40:6,16
**appropriately**
  35:2
**approval** 26:10
**approve** 15:6
**approved** 33:20
  34:14
**approximately**
  10:12
**april** 1:16 17:7,13
  43:25
**araya** 5:18
**argentina** 10:3,19
  10:21 11:8,23
  12:7,15 15:23
  16:6 19:22,23
  29:24 33:24
**argentine** 9:22
  10:1,20 11:4
  15:10 19:20
**arrangement**
  14:22 15:1 16:1
  16:19

**asked** 19:3 36:10
  36:19 39:7
**asking** 8:6,21 24:3
  37:4,21
**assets** 10:19,21
  11:7
**assist** 38:22
**attached** 27:15
**attention** 8:14,18
  9:9 32:16
**attorney** 34:1
**attorneys** 3:4,14
  4:2,10
**authorizing** 2:4,6
  2:8,17
**automatic** 2:19
  18:15 29:13,18
  30:3,16 36:12,18
  42:9
**available** 22:4
  27:14 32:3 38:22
**avenue** 3:5 4:11
**aware** 8:9 24:6
  29:19 33:14 34:19

**b**

**b** 1:21 27:16
**back** 7:12 16:8
  19:4 28:16 40:25
**background**
  13:20 23:4
**bank** 10:22
**bankruptcy** 1:1
  1:12,23 12:20
  19:18 30:5
**bare** 17:17 23:5
**barefoot** 4:7 6:15
  6:16,19 22:23,23
  22:25 23:1,11,17
  31:2,3,4,5,13,15
  31:19,22,24 32:11
  36:23 37:3,7,11
  37:24 38:6,25
  39:4,9 40:2,3,8,12

  40:23 41:1,12
**barefoot's** 36:6
**barest** 34:9
**based** 18:9 20:10
  25:5 28:12 29:1
**basically** 15:19
  28:16
**basis** 12:2 24:16
  24:18 28:23
**bear** 7:14 9:13
**began** 13:21
**beginning** 7:1
  11:21
**behalf** 6:17,21 8:1
**believe** 18:9,9,12
  18:13,14,15,22,24
  20:9 22:4 33:24
  34:17 35:9 36:16
  38:6 39:9
**believes** 33:10
**ben** 5:16
**benefit** 17:20 34:2
**benjamin** 5:8
  27:13,24
**best** 33:16
**better** 40:18
**biggest** 17:25
**bit** 10:5 17:8
**blaine** 5:7,17
**blatant** 36:17
**blue** 10:16
**board** 17:14
**boards** 12:18
  33:22,23
**bones** 17:17 23:6
**border** 35:6,24
  39:8 40:10
**bottom** 9:23
**bowling** 1:13
**break** 24:17
**brendan** 4:19
**brian** 3:18 6:12
  25:3 26:15 39:23

**briefing** 35:5
  38:15 39:19
**briefly** 32:4
**bring** 8:14 19:24
  20:14
**bringardner** 4:23
**british** 9:20
**brought** 14:1
  20:12
**built** 10:1
**business** 14:19
  17:2
**businesses** 2:18
**bystander** 14:5

**c**

**c** 3:1 6:1 27:9 43:1
  43:1
**call** 7:9,11 9:9
  22:4 23:5 25:17
  31:14
**cammesa** 12:4
**canada** 14:18,22
  14:24 35:3
**canadian** 9:21
  13:15 19:12,12
  34:25 37:18
**capacity** 38:22
**capital** 1:7 6:3
  10:9,11,14,15,17
  10:22 13:9,16
  18:19 23:22 33:8
**captions** 24:8
**caride** 5:13
**case** 1:3 6:4 7:4
  9:9 15:1 24:1
  25:18 26:2 34:25
  38:7
**cases** 2:11 6:5
  10:6 18:15 20:10
  24:4,5 28:9 29:20
  30:11 32:6,12,18
  37:5,20,22

cash  34:14
cause  26:18
caused  12:17
cbc  14:20
cbca  13:17 14:17
  14:18,21,22,25
  16:12,13 18:20
  19:12 20:5,13,21
  21:2 32:20 36:3
  37:25 38:5
cbca's  33:3
ccaa  18:17 19:1,5
  20:9,12,14 36:9
  37:5,9 38:2
ccwa  14:19,23
cease  16:18
central  34:24
certainly  7:3
  18:22,25 21:10
  33:16 35:7 40:14
certified  43:3
cetera  23:6
chain  15:19
chambers  38:13
chambers'  35:7
change  13:8,25
  28:13,14
changed  28:16
changes  21:10
  24:8
chapter  17:19
  20:6 21:2 32:12
  33:4 37:20
chart  9:19,24
  11:10 13:5
charts  10:16
christopher  5:19
chutchian  4:24
circumstance
  20:19
circumstances
  19:16,17

citizen  13:15
claims  2:9,14
  25:24 27:4,8 29:6
clarification
  28:22 30:15
clarify  37:13
clear  20:4 37:17
cleary  4:1 6:16
  31:5,24
clerk  2:14 25:24
  26:8 27:8,10,13
  27:24 28:4,7 29:6
  42:8
clerk's  28:2,5
client  39:7
clients  31:8 32:11
  39:2,11
code  30:5,8,13
colleague  7:17
  22:19 26:23
come  7:9 11:14
  13:17 19:4 39:19
comfort  29:18,19
  29:25
coming  12:9
  13:25
commence  17:14
commenced  18:23
  32:20 36:12 37:9
commencement
  2:11 26:2 37:20
commended  19:1
comments  26:5
committee  4:2
  6:17 31:6,24,25
  33:10,14 40:8
committee's  32:5
commonly  29:19
companies  9:21
  9:22,23 10:1,5,19
  12:19,24 13:1
  17:21 19:20 29:22
  34:18

company  9:25
  12:2,9,14 14:5,6,7
  14:8,16,25 17:25
  34:22
competitive  28:7
competitors  28:6
complete  15:25
completed  15:21
completely  20:7,8
  36:20 38:23
completion  15:15
  15:21
complicated
  32:14
conceded  18:24
concerned  32:12
concerning  34:1
concerns  15:16
concluded  41:15
concludes  31:1
conclusion  24:24
concurso  12:15
concursos  12:24
conduct  34:4
confer  38:20
  39:18
conference  38:14
confirm  28:14
conflicting  32:19
consensual  13:22
  13:23 14:16 16:19
  38:15
consent  33:11
conserve  14:10
consider  28:5
consideration
  36:24
considered  14:7
considering  22:6
consistent  34:10
consolidate  24:4
consolidated  2:7
  24:16 25:23

consolidating
  24:15
contact  40:6
contemplated
  14:16 35:11
contemporaneous
  13:25
context  18:5
continue  7:14
  17:18 35:2
continued  17:4
continues  10:9
contrast  14:19,23
control  29:22
controversial  8:8
convene  38:13
convened  37:16
conversation  41:6
convert  38:2
cooper  5:10
coordinate  26:7
  40:24
cornell  5:2
corp  10:14,15,17
  10:22 13:16 18:19
corporation  38:7
corporations
  14:19
correct  13:4 37:7
cos  13:2
counsel  14:1 27:1
country  11:24
  43:21
couple  32:15
course  2:18 21:4
  31:15 40:6
court  1:1,12 6:2
  6:10,14,19,23 8:8
  8:12,13,19,22
  9:13,16 12:20,22
  13:2,5 15:2,2,3,11
  15:13 16:7,8,22
  18:11,25 19:4,11

19:12,12,13,19
20:10 21:13,17
22:5,8,11,14,22
22:25 23:11,16,18
24:20,22 25:1,7
25:14 26:13,17,24
27:6,14,20 28:14
28:24 29:3,10,15
30:2,17,20 31:3
31:13,16,18 32:10
32:21 33:20 35:3
35:17 36:16 37:2
37:8,18,21 38:4
38:17,24 39:5,13
40:1,7,11,24 41:2
41:5,8,14
**court's** 8:2,14,18
17:20 24:3 26:10
**courts** 30:1,10
33:4
**court's** 32:16
**cover** 22:21
**credit** 11:2,5
**creditor** 17:10
**creditors** 2:5,8,8
10:8 12:12 14:15
16:2 25:22,23,25
26:7 30:1
**crisis** 11:25
**critical** 34:19
**cross** 35:6,24 39:8
40:10

**d**

**d** 6:1 42:1
**date** 19:3 26:6
33:9 43:25
**david** 5:14 9:2
**day** 6:5 7:22
17:21,21 24:19
33:5
**days** 16:16 17:2
17:13 26:1

**dead** 20:21
**deal** 23:12
**debt** 12:10
**debtor** 1:9 3:4
20:4 24:17,18
29:5 34:11
**debtors** 2:5,6,8,17
7:20 8:24 9:9,19
15:12 19:15,21
20:3 23:6,22 24:3
24:12,14 25:16,20
27:2,4,7 28:4,7
29:20,21 32:20
33:7,15,17 34:15
34:22 37:10,12
**december** 15:10
16:3,4
**dechert** 4:9 6:21
**decide** 16:9 40:9
**decided** 17:14
19:24
**decision** 15:10,13
15:14,17,18 16:7
16:22 18:7
**declarant** 13:10
**declaration** 9:2,8
9:11 22:3,9 27:12
27:15,18,21,24
33:5
**deem** 40:6
**deemed** 28:19
**default** 12:15
**degree** 10:2
**demonstrated**
32:25
**department** 3:13
**depicted** 9:18,23
10:16 11:11
**describe** 9:10
**described** 20:20
29:22 33:1 34:9
**designed** 20:6

**desire** 34:6,11
**detail** 21:11 38:8
**determined** 28:7
**didn't** 36:1
**different** 15:7
20:7,8,11 21:3
**difficult** 30:2
**direct** 18:14 22:10
22:13 27:21 33:22
**direction** 23:7
32:7 35:7,15
**directly** 11:3
**director** 9:5 13:11
13:13,14,15,16
**directors** 9:4,6
13:8 33:23
**disbursements**
24:17
**disclose** 6:25
**disclosure** 33:5
**discovery** 35:5
38:15
**discuss** 13:22 21:6
23:9 31:20
**discussing** 32:6
**discussion** 36:16
**discussions** 39:22
**disregard** 36:17
36:17
**disregarded** 8:3
**disrupt** 15:25
**disruption** 12:8
**district** 1:2 30:12
**doc** 2:2,12,15,20
**docket** 7:24 8:2
8:16 9:2,12 23:24
24:5,7 26:11 27:5
28:15 29:12 31:10
32:3
**docketed** 24:1,7
25:18 26:11
**document** 29:4

**documents** 12:16
**don't** 26:13 34:16
36:5
**drafted** 24:16
**draw** 8:18 32:15
**drivetrain** 13:11
**duck** 20:21
**due** 11:22 15:15

**e**

**e** 1:21,21 3:1,1 6:1
6:1 42:1 43:1
**earlier** 24:6 36:8
**early** 15:9 16:5
19:8
**easiest** 9:10
**ecf** 22:9 24:1
25:18,18
**ecro** 1:25
**effect** 12:14 16:14
18:15 19:11 28:17
28:19
**effectively** 9:25
10:12 20:14 38:2
**efforts** 33:14
**either** 7:1 9:3
38:14 40:10
**elect** 19:22
**electronic** 2:5
25:22
**element** 28:10
**embedded** 30:5
**endorsement** 8:15
8:21 18:6 19:7
20:16 40:4,21
**energy** 11:11,11
13:3
**enforce** 37:1
**enforcement**
29:13
**enforcing** 30:16
**engagement** 28:9
28:18

ensure 33:15
entails 36:6
enter 30:16
entered 12:12
  25:11 32:25 33:6
entering 40:10
entirely 36:1
entities 9:4,4,21
  11:4 12:3,24
  17:19 18:18 19:21
  35:1 38:4,9
entity 9:20 10:15
  11:10 12:5,6
  18:19 38:4
entry 28:22
equity 33:8
essentially 10:7,8
  16:15,18
establish 35:5
establishing 2:10
  26:1
estate 33:16
et 23:6
evening 17:13,14
  35:8
event 12:15 20:11
  33:13 36:3
events 11:23 15:7
  15:19,22
everyone's 35:10
evidence 22:3
  27:19,21,25 33:6
exact 38:9
exactly 37:6
examples 20:1
excellent 25:12
exercise 12:17
  13:7 34:15
exhibit 9:11 27:16
  35:25
existence 11:20
existing 12:10

expect 7:12 34:11
expecting 7:9
expeditiously
  35:10 38:11
expenses 17:21,21
  17:23 34:17
experience 13:13
  28:3
expiration 16:16
  16:17,23
expired 17:7
  32:18
expires 16:15,17
explain 8:24 30:3
extend 16:11
extended 16:21,21
  17:2,12
extending 2:9
  25:25
extension 16:23
  17:1 35:11
extent 21:24 29:5
  29:7 36:9,18 40:5
extract 34:7

### f

f 1:21 43:1
facilities 10:24
  11:2,5
facility 11:10
fact 17:1 19:4
  20:11 36:21
facto 30:4
facts 34:4
factual 23:3
fairly 11:23 24:2
  34:9
familiar 14:20
  20:9 30:6
familiarity 14:21
fast 17:8
favor 36:10,19
  37:5,23

feedback 28:12
fees 11:18 17:23
  17:23 34:19
fermin 5:13
figure 17:22
file 2:7,9 8:21 9:1
  18:7 24:12 25:22
  25:25 38:12 40:18
filed 7:23 8:1,15
  8:17 12:15,24
  13:1 18:8,17,20
  18:23 19:10 20:16
  20:24 21:22,25
  23:10 24:19 31:9
  32:1,7,13,17
  33:25 35:4,8 36:3
  36:17
filing 32:5,7
filings 17:17
final 15:5 28:23
finally 34:3
finance 17:18
financial 7:6
  11:25
financing 33:7,11
  33:15,18,19
find 26:18
fine 22:22 29:15
  32:10 38:24 40:3
firm 7:2,5,7
first 6:5 7:20,22
  22:20 23:25 24:19
  32:13,16 33:5
five 7:12 9:20
  16:16
focusing 16:6
folks 39:1,19,21
follow 30:11,12
followed 15:19
following 16:4
  25:21
force 28:19

foregoing 43:3
foreign 33:3
form 10:10 11:17
  24:7,19 26:11
  28:13
formal 31:1 37:12
formally 37:25
format 2:5 25:22
former 13:12 37:8
forms 41:10
forth 9:8 33:22
forward 7:10 17:6
  17:8 24:2 37:15
found 25:17
founded 18:7
four 9:22 10:2
  15:25 21:21,24
  22:2,6,10
fourth 10:11
fred 6:7 7:19
frederic 3:8
friday 17:3
front 9:17 12:20
  18:10
frozen 11:19
fund 17:22
funding 11:16
funds 11:19
further 21:11
  33:12
future 19:20

### g

g 6:1
gabriel 5:6
gambit 34:7
garrity 1:22 6:3
  31:19
general 9:6
getting 31:13
given 21:25 28:9
go 22:19 24:22
  30:9 36:25

**going**  7:10 16:7,9
16:17 17:11 18:15
19:19 39:14
**good**  6:2,7,12,15
6:20 23:17,21
25:3 26:18,25
31:4,18 40:23
**gottlieb**  4:1 6:16
31:5,24
**gramercy**  33:7,25
**grant**  20:18 29:5
30:23
**granted**  25:10
26:19 27:23 29:7
34:2 42:6,7,8,9
**great**  24:2 41:2,9
**green**  1:13 11:11
**grid**  12:6
**grm**  11:11,11
**group**  4:2 6:17
8:1 9:21 14:14
19:10 20:12,24
23:10 31:6
**groups**  10:8
**guarantee**  11:6
**guarantors**  11:12
**gueli**  3:11 6:9
**guess**  31:1 39:7,16
**guidelines**  24:13
**gunther**  5:3
**guys**  40:25

**h**

**hamilton**  4:1 6:16
**handful**  34:13
**handle**  19:19
**handled**  28:9
**handling**  23:23
**happen**  17:4
**happened**  11:22
14:2 16:20 17:9,9
**happening**  13:21
16:10

**happens**  7:14 16:6
20:2
**happy**  23:13
**harmes**  4:20
**hear**  23:8,13
**heard**  21:12,21
25:2,8 26:17
28:25 30:18,21
32:4 35:18
**hearing**  2:1,4,14
2:17 6:5 7:10,15
7:22 18:10 19:14
20:20 26:3 34:5
35:16,21 37:5,16
37:22 38:13
**hearings**  39:2
**held**  36:22
**help**  18:5
**hindsight**  18:4
**hiring**  28:4
**history**  32:14
**hoc**  4:2 6:17 8:1
14:14 19:10 20:12
20:24 23:10 31:6
**hold**  31:8
**holder**  33:8
**holders**  33:12
**holding**  9:22 10:5
12:19 17:20 29:22
34:18,22
**holdings**  31:10
32:2
**holds**  31:25
**hon**  1:22
**honor**  6:7,12,15
6:20 7:18,20,23
8:23 9:9,18 10:4
13:24 14:20 17:16
18:4 19:15 20:8,9
20:15 21:5,7,14
21:14,15,19 22:6
22:7,16,17,23
23:2,17,20,23

24:2,6,25 25:3,5
25:13,16,20 26:3
26:9,16,22,25
27:7,17 28:1,1,11
28:21 29:1,9,11
29:16,17,18 30:14
30:19,25,25 31:5
31:12,15,22,23
32:4,11 33:4,18
33:22 34:3,8,16
34:23 35:1,3,14
35:23 36:3,5,8,18
37:7,11,25 38:6
38:16,19,21 39:4
39:9,23,24 40:3,5
40:9,23 41:1,7,12
41:13
**honor's**  14:21
19:11 23:7 27:3
29:14
**honor's**  32:7
35:15
**hope**  17:25 22:4
38:20
**horrocks**  5:19
**housekeeping**
6:24 7:8
**hurtado**  5:4
**hyde**  2:25 43:3,8

**i**

**identity**  39:12
**ii**  2:6,18
**iii**  2:8
**impact**  13:8 15:17
**implement**  15:1
35:6 39:7,21
**implementation**
2:19
**implementing**
15:5
**important**  33:2
34:20 36:24

**importantly**  20:5
27:9
**include**  7:25
**included**  8:2
**indefinitely**  16:3
**indentured**  10:25
11:20 18:17
**independent**
13:11,15
**indicated**  40:20
**indiscernible**
34:25 36:23 39:24
41:11
**indisputable**
18:22
**informally**  17:7
21:6
**initial**  21:21
**injunction**  15:14
15:20
**insider**  33:7,11
**insolvency**  14:23
19:24 20:6 33:2
**intend**  7:24 34:24
36:13
**intent**  30:13
**interest**  11:7
35:10 39:12
**interesting**  15:22
**international**
28:10 29:21
**interrelate**  16:12
**interrupt**  37:2
**interrupted**  39:6
**interrupting**
12:23 23:1 24:23
**investor**  13:12
**invite**  35:14
**invites**  40:5
**inviting**  16:13
**involuntarily**  19:1
**involuntary**  18:17
36:11 37:9,15,19

**involved**  7:4
**ipso**  30:4
**ish**  11:4
**islands**  9:20
**issue**  34:24 36:4
  39:16
**issued**  8:15 10:14
  10:17 11:3,10,11
  15:10 16:7 24:15
**issuer**  18:19
**issues**  17:5
**item**  8:11 23:25
  25:15,16 27:4
  29:11,12 31:11
  32:3 34:25
**items**  21:22 22:20
  22:21 23:23
**it's**  31:18 33:2,18
  34:17 35:9 36:7,7
  36:21 37:22 39:15
  40:14,21
**iv**  2:9
**i'd**  32:4 35:3
**i'll**  40:3
**i'm**  37:2,8,11 38:7
  38:8,21 39:5,14
  39:15

**j**

**jaksa**  5:11
**james**  1:22 5:11
**jlg**  1:3
**john**  3:11 4:23 6:9
**joint**  2:1 23:25
  42:6
**jordan**  3:10 6:9
  22:18 23:21
**jr**  1:22
**judge**  1:23 6:2
  15:3 31:18
**jump**  31:19
**jurisdiction**  35:13
**jurisdictions**  30:9

**justice**  3:13 8:13
  8:20 13:18 15:3
  18:5 19:6 20:17
  21:5 32:21,25
  37:17 39:2,7 40:5
  40:13,20

**k**

**keep**  28:2
**keeping**  34:5
**kessler**  4:18
**kind**  10:4
**know**  14:21 16:20
  17:13 18:4,7,16
  18:21 20:7,17,20
  21:4,10 36:5
  39:11,20
**knowledge**  18:14
  18:24
**konyukhova**  5:12

**l**

**l**  1:22
**lame**  20:21
**large**  28:9
**largely**  11:17 16:5
  17:22
**largest**  2:7
**late**  15:9 17:12
  18:20 35:8
**law**  7:2
**lawyer**  13:12
**lead**  18:5 25:18
**leases**  10:23
**led**  12:1
**ledanski**  2:25 43:3
  43:8
**lee**  5:9
**legal**  43:20
**legge**  5:5
**legitimate**  34:6,11
**lenders**  4:10 6:22
  11:17 12:17 13:21
  14:15

**letter**  19:2 28:19
**let's**  35:19
**leverage**  34:7
**lexington**  3:5
**liability**  28:18
**liberty**  4:4
**lieu**  2:6
**light**  8:7 34:9
**limitation**  28:18
**limited**  6:4 9:5,7
  35:12
**limiting**  22:13
**line**  9:21 42:4
**lipsky**  4:21
**list**  2:5,7 25:17,22
  25:23 42:7
**litigation**  34:7
**little**  10:5,7 17:8
**live**  22:4
**llc**  2:14 13:11
**llp**  3:3 4:1 6:16,21
**loan**  11:9,9 12:16
  14:15
**local**  9:1,1
**located**  10:3,21
**long**  7:10 32:14
  36:1
**look**  10:10 35:24
  39:13
**looked**  10:9
**looking**  16:25
  22:4
**looming**  16:23
**lot**  8:8 17:17
**lp**  13:3
**lucia**  5:4
**luke**  4:7 6:15
  22:23 31:5,23

**m**

**mack**  5:14 9:2,3
  13:10,25 22:3
  33:5

**mack's**  9:11 22:3
  22:9,12
**mailing**  2:6 26:8
**maintain**  17:12,15
  24:4
**majority**  31:25
**making**  23:14
  39:14
**management**
  34:15
**manzoor**  13:14
**marc**  4:22
**march**  10:6 11:21
  11:22 12:9 16:11
  16:21,24,25 17:3
**maria**  4:24 5:12
**masumoto**  3:18
  25:1,3,4 26:14,15
  26:15 28:25 29:1
  30:18,19 39:21,23
  39:23
**mateo**  15:12,15
**matrix**  2:6
**matsumoto**  6:10
  6:12,13
**matter**  1:5 6:3 7:8
  7:9 8:14 27:22
  39:1 41:4
**matters**  6:4,24
  21:20 22:11,14
  23:15 35:12
**mcewen**  8:13 15:3
  20:17 21:5 32:25
  37:17 39:2,7 40:5
  40:13,20
**mcewen's**  8:20
  13:18 18:6 19:7
**meant**  30:8
**meet**  38:20
**meeting**  15:6,8
  16:2 26:7
**member**  7:2 13:11

members  33:24
mention  8:11
  13:24
mentioned  11:14
  13:7 16:20 19:6
  20:3 36:8
met  17:14
mezz  11:9
mezzanine  4:10
  6:22
michael  4:21
middle  10:15
mike  5:5
million  10:13 11:4
mine  22:19
mineola  43:23
ministerial  22:14
minor  28:13
minute  34:7
minutes  7:13,13
models  30:11
modification
  24:10
modified  24:7
modifies  24:11
modify  24:9
moment  9:14
monthly  24:12
months  35:3
morning  6:2,7,12
  6:15,20 7:21 19:9
  19:10 22:11,15
  23:21 24:6 25:3
  31:4,10 32:2
motion  2:1,4,14
  2:17 8:16 19:6,10
  19:15 20:24 21:11
  21:12 23:25 24:2
  24:19 25:9,10,17
  25:20 26:4,10,18
  26:19 27:4,16
  28:11 29:3,4,5,7
  29:13,17 30:7,23

30:23 34:15 35:5
  35:6,6,11,19,22
  35:25 36:4,5,6,7
  36:25 37:4 38:1
  39:15 40:18 42:6
  42:7,8,9
motions  8:1 17:17
  21:21,25 22:2,7
  23:10,12 32:6,9
  34:13 35:4,8,16
  35:19,20 38:12
movant  39:10
move  20:13 21:10
  22:3,6
moved  20:14
moving  20:23
  25:13,15 27:11
  29:11 37:15

**n**

n  3:1 6:1 42:1
  43:1
name  33:3
nature  21:8 22:1
naveed  13:14
necessary  19:23
  21:24 30:1 40:21
ned  3:9 6:9 22:20
  26:23 27:1
need  22:1 31:16
  39:22 41:3
negotiate  14:11
  17:5
negotiated  14:4
negotiations  14:5
new  1:2,14 3:6,16
  4:5,12 28:17
night  18:21
noh  4:14 6:20,21
  6:23
noise  15:15
nongovernmental
  12:6

notable  33:18
notably  34:14
notation  8:2
note  7:25 8:10,17
  17:19 28:3 33:2
  40:4,19
noted  20:16 34:4
noteholders  4:3
  6:18 13:21 14:15
  15:6 31:7 34:3
notes  10:13,17,18
  11:6,17 18:19
  31:9 32:1 39:10
notice  2:8 7:21
  25:25 26:8 33:11
noticing  2:15
  25:24 27:8 29:6
notify  26:1
notifying  2:11
nuances  38:9
number  6:4 7:24
  8:16 9:2 11:23
  22:9 23:24 24:1,8
  25:18 26:12 27:5
  28:5,15 29:12
  31:11 32:3
ny  1:14 3:6,16 4:5
  4:12 43:23

**o**

o  1:21 6:1 43:1
o'clock  19:9
object  22:8
objection  25:6
  26:16 27:20 30:19
  40:9,15
objections  27:17
  29:2
obligation  11:13
obligations  12:10
obligors  11:3
observations  23:2
obvious  20:10

obviously  14:6
  39:11
october  32:20
oden  4:25
office  6:13 24:11
  25:4 26:5,15
office's  28:12
offshore  10:22,24
  11:18
oh  24:24
okay  6:23 13:2,2,5
  22:16 25:8 28:14
  39:13 41:5,8,14
old  43:21
omar  5:15
once  26:7
ontario  8:12,13
  15:2,2 18:11
  32:21
op  13:2
open  32:24 37:25
opened  15:1 16:13
operate  2:18 10:1
  29:23
operates  12:6
operating  9:23
  10:1,19,23 12:1
  13:1 19:20 24:13
  24:13 29:23 33:23
operation  10:2
operations  19:22
opportunity  25:9
  26:4 30:22 35:19
  36:15 38:14
opposed  19:14,15
order  2:4,17
  17:10 24:7,18
  25:5,10 26:11,20
  28:13,20,22 29:2
  29:8,18,25 30:7
  30:10,13,16,24
  32:25 36:22

ordered 38:16
ordering 2:19
orders 29:19 30:2
  41:9,10
ordinary 2:18
organization 9:19
  9:24
originally 24:16
outlined 23:4
outside 10:21
outstanding 10:13
  31:9 32:1
overlapped 7:3
overlapping 41:6
overturned 15:14
owned 15:11
o'neill 4:19

**p**

p 3:1,1 6:1
package 11:6
  33:15
page 9:11 20:19
  42:4
pages 28:16 35:25
paid 34:18,21
paragraph 24:9
  28:17
pardon 12:22
part 10:11 13:17
  14:1 16:5 39:2,22
parties 2:11 14:3
  14:7,10 15:4
  16:10,18 17:4
  26:1 32:18 37:13
partner 9:6 22:20
partners 7:5
partnerships 9:5
  9:7
paul 5:3
pause 21:15
pay 11:18
pending 8:16 15:9
  19:6 21:11 32:24

36:24 38:1
percent 31:8
period 6:25
permission 24:3
  27:3 29:14 31:12
  32:3
perspective 31:21
petition 33:8,19
  34:16 37:19 38:10
petitioner 38:7
petitions 33:25
place 32:13
plan 14:22 15:1,5
  15:6 16:1
plans 16:14
plant 15:12,21
plant's 15:15
plants 10:3 15:11
  15:25
plaza 4:4
pleadings 34:8,10
please 6:6 9:17
  26:20 27:6 29:8
  30:23 39:19
pledge 11:6
pledged 10:20,25
plenary 14:23
  19:18 20:5
plenty 20:1
pm 41:16
podium 22:18,18
  26:22 31:2
point 11:15 18:1
  19:23 20:23 21:8
  21:17 34:16 39:16
  40:12,17,19
pointed 36:23
points 28:21
  30:14 32:15
point's 40:19
pollution 15:16
position 32:5 36:7
  38:11

possession 24:14
possible 38:12
post 34:16
postponed 15:8
potentially 32:19
power 10:2 12:3,4
  15:11,12,21,25
powers 34:1
precious 35:11
prefer 23:8
premature 20:17
  20:25 40:17
prepare 2:5 25:21
prepared 38:8
presence 29:21
present 4:16
  38:15
presentation
  23:14 24:25 32:22
preserve 34:20
  36:22,22
president 27:13
presiding 15:4
prevent 17:10
previously 15:14
prime 2:14 25:24
  26:8 27:8,10,13
  27:24 28:2,4,5,7
  28:14 29:6 42:8
principal 12:3
prior 17:3 20:10
  26:3
private 12:5
problem 21:4,7
  40:16
problems 12:1
procedural 23:6
  32:14 34:13
procedurally 24:4
procedure 14:22
procedures 2:10
  26:1 32:8 39:8

proceed 9:17 27:3
  27:6 29:14 32:8
  35:10 38:11
proceeding 14:17
  14:18,18,24,25
  16:15 18:1 19:24
  20:6,22 21:2,2,9
  35:1,9,12 36:10
  36:11,19 37:1,12
  37:15,18,25 38:1
  38:1,3
proceedings
  17:15 18:17 19:18
  20:11 21:3 32:16
  32:19,21,23,24
  33:1,2,3 37:9
  41:15 43:4
process 13:17
  14:3 15:22 26:6
productive 38:25
professional
  17:23 34:19
prohibiting 15:15
promptly 38:13
proposals 28:5,6
propose 7:11
  21:20 22:17
proposed 25:5,24
  26:11 27:1 28:13
  29:2 30:7
protocol 19:10,17
  19:23,25 20:4,25
  21:1,9 35:7,24
  39:1 40:10
provided 28:20
providing 8:21
  21:23
provisions 30:3,4
  30:4,8,12
public 12:5,6
publication 26:8
publicized 11:24

**purchase** 12:4
**purposes** 21:23
  22:2,6
**pursuant** 26:10
  27:8 28:20
**pursuing** 16:19
**put** 11:16 13:13
  18:5 19:11

**q**

**qualifications**
  28:2
**questions** 21:16
  26:9,13 27:15
  28:21,24 30:14,18
**quickly** 41:11
**quite** 15:22 32:11
**quo** 17:12,15
**quote** 20:21

**r**

**r** 1:21 3:1 6:1 43:1
**rachael** 5:20
**rates** 28:8
**reach** 13:22 39:20
  40:22
**reaching** 8:20
  40:14
**read** 24:12
**ready** 10:2
**really** 14:4,9 17:9
  30:7 34:9 36:6
**reasonable** 28:8
**reasons** 34:23
**receives** 10:24
**recess** 31:17
**recognize** 12:2
**recognized** 33:3
**record** 6:21,25
  7:19 17:19 31:23
  40:4 41:6 43:4
**redress** 36:13
**referred** 32:23
**reflected** 28:15
  32:2

**reflecting** 31:10
**regard** 8:25
**regularly** 30:11
**reinstate** 15:20
**related** 37:13
**relates** 22:10
**relationship** 7:5,6
  34:20
**relatively** 8:6
**release** 25:21
**relevant** 23:3
**relief** 8:6,7 19:5
  20:18 23:6 26:19
  27:9 34:10 39:15
**remain** 32:24
**remand** 16:8
**remanding** 16:22
**remarks** 23:2
**remedies** 12:17
  13:7
**reminding** 19:2
**reorganize** 34:6
  34:12
**replaced** 12:18
**reporting** 24:14
**reports** 24:13
**republic** 29:23
**request** 8:11,12
  24:10 25:6 27:18
  27:22 28:22 30:15
  35:20 37:6 38:12
**requested** 26:19
**requesting** 29:25
**required** 14:6
  17:2 24:13
**requirements**
  24:14
**resolution** 13:23
  17:5 36:24 39:17
**resolve** 14:11
  39:21
**resources** 35:12

**respect** 8:17 15:11
  21:2 23:9 27:10
  28:19 32:4 35:15
  37:14,19
**respectfully** 30:15
**response** 18:16,16
  22:12 27:22
**restate** 30:8
**restructuring**
  13:12 14:14,17
  16:11 33:13
**result** 12:8 13:6
  16:1
**resulted** 14:13
  17:6
**retain** 27:8,11
**retention** 27:4
**revenue** 10:24
  12:2,3
**reversed** 15:13
**reversing** 15:18
**review** 25:9 26:4
  30:22 35:19 41:10
**reviewed** 26:18
  29:3
**reviewing** 28:6
**revised** 25:5 29:2
**revoke** 34:1
**revolving** 11:2,5
**richard** 5:10
**right** 6:2,10,19,23
  9:16 21:13 22:8
  22:22 23:19 24:20
  25:1,7 29:3 30:17
  30:20,22 31:18
  32:10 35:17 37:10
  37:21,24 38:4,8
  38:17,24 39:13,13
  39:15,16,17 40:1
  41:2
**ring** 7:11,11 31:16
**road** 43:21

**rodriguez** 39:20
**routine** 21:25
**rsa** 16:12,13,16,17
  16:23 17:1,2
**rule** 9:1,1
**rulings** 42:3

**s**

**s** 3:1 6:1
**salient** 32:15
**sasson** 5:6
**satisfy** 12:10
**saw** 18:21,22
**saying** 16:7
**says** 20:17,19
**schedule** 35:5,21
  38:15,21 39:19
**scheduled** 6:5
  21:21
**schedules** 2:10
  25:17 42:7
**scheduling** 35:15
  36:4,5
**schodek** 3:9 6:9
  22:21 26:23,24,25
  27:1,7 28:1 29:8,9
  29:11,16 30:25
**scope** 34:5
**scott** 5:7
**second** 7:8 11:25
  13:14,18 23:24
  25:15 32:18
**section** 27:9,11
  28:18 33:21
**secured** 6:18
  10:13,18,18 31:6
  31:9 32:1 34:3
**see** 6:11 8:6 17:5
  17:16
**seeing** 30:2
**seek** 19:5 27:7
  33:17 36:13
**seeking** 19:10
  20:25 25:21 27:10

29:6
**seen** 8:19 36:4
**selected** 33:24
**senior** 6:17 31:6,9
    31:25
**sense** 19:17,24
    20:1 21:1,9 23:12
    40:18
**sent** 19:2 28:11
**series** 15:7
**services** 28:20
**set** 9:8 13:22
    15:22 26:7 32:18
    32:19
**setting** 26:6
**shape** 10:10
**shara** 5:2
**share** 11:5,6
    39:11
**shares** 34:1
**shearman** 3:3 7:2
    7:19 23:21 27:1
**sherman** 6:8
**shop** 33:15
**short** 7:21
**shorter** 28:2
**shortly** 16:21 18:8
    19:5,8 33:8,19
**show** 30:10
**simply** 24:11 30:8
**sits** 16:8
**six** 9:8,19 24:4
    35:3
**sixth** 4:11
**slightly** 24:7,12
**sofas** 25:25
**sold** 12:4
**sole** 9:3,6 11:18
    13:13 18:19
**solely** 22:10
**solomon** 4:14 6:21
**sols** 25:25

**solutions** 22:5
    43:20
**solvent** 14:22
**someplace** 19:25
**somewhat** 15:18
**sonya** 2:25 43:3,8
**sorry** 12:22,22
    13:2 15:9 22:25
    24:22 31:13 37:2
    37:8 39:5 41:8
**sort** 8:24 10:15
    11:25 14:8 17:16
    19:19 37:13
**sosnick** 3:8 6:7,8
    7:3,16,18,19 8:23
    9:13,15,16,18
    12:23 13:1,4,6
    21:14,19 22:16
    23:4 29:22 32:13
    33:1,6 34:8 35:17
    35:18,23 37:3
    38:17,19 39:18
    40:25 41:6,8,13
**sosnick's** 32:22
    38:11
**sought** 12:11
    20:18 33:25
**source** 11:19 12:3
**southern** 1:2
    30:12
**speak** 28:3
**specific** 19:5
    24:10
**specifically** 25:21
**spent** 16:5 35:12
**stakeholders**
    14:11
**standard** 29:17
**standstill** 12:11
    12:14,16 17:6,11
    32:17
**start** 35:20

**started** 6:24 7:17
**starting** 31:20
**stated** 36:23
**statement** 18:6
    21:6 31:10 32:1
**statements** 2:10
    18:9 37:14
**states** 1:1,12 3:13
    6:13 11:1,19 25:4
    26:16
**status** 17:12,15
    31:21 37:14
**stay** 2:19 16:14
    18:15 19:2 29:13
    29:18 30:3,16
    36:12,18 37:1
    42:9
**steel** 5:8 27:24
**steele** 27:13,14,18
    27:21
**steele's** 27:21
**steen** 4:1 6:16
**steering** 4:2 6:17
    31:6,24,25 32:5
    33:10,14 40:8
**steps** 15:5 23:4,9
**sterling** 3:3 6:8
    7:3,19 23:21 27:1
**stoneway** 1:7 6:3
    10:14,14,17,22
    13:3,16 18:18
    23:22 38:7
**stood** 14:10
**stop** 15:20 39:14
**story** 11:21
**street** 3:15
**strictly** 30:12
**strictures** 33:21
**structure** 10:9,11
    13:9
**stuff** 36:2
**subject** 18:20 38:5

**submission** 13:18
**submit** 25:10
    26:19 29:8 30:23
**submitted** 29:4
**subsequent** 13:20
**subsequently**
    13:14
**subsidiaries** 29:23
    33:23 34:2
**substantial** 29:20
**suggest** 36:20
    38:10
**suggestion** 38:25
**suite** 3:15 34:10
    43:22
**suited** 28:8
**superior** 8:13
    15:2 32:21
**support** 14:14
    16:11 21:23,23,24
    22:1,2 29:4 33:13
**supported** 27:12
**supreme** 15:10
**sure** 22:1 28:4
    36:1 37:11 38:8
    38:21 39:15
**surprised** 32:12
**suspect** 36:2
**suspended** 16:2

**t**

**t** 43:1,1
**take** 7:11 18:2
    20:15 23:7 32:7
    37:18
**taken** 40:20
**talk** 23:14,15
**technically** 39:10
**tee** 34:24
**telephonically** 3:8
    3:9,10,11,18 4:7
    4:14,16
**tell** 18:12

ten  7:13
tense  32:23
term  11:9,16
    12:17 13:21 14:15
terminology  38:2
terrific  6:14 23:18
testimony  22:10
    22:12,13 27:22
text  24:12
thank  6:10 7:18
    7:21 8:19,23 9:18
    13:5 21:17 22:16
    23:11,17,18,20
    24:20 25:1,8,12
    25:14 26:14,21,21
    27:6 28:1 29:9,10
    29:15,16 30:25
    31:4,16,22 32:10
    40:24 41:2,13
thanks  41:9,11,12
that'd  32:10
that's  32:2 33:5
    36:25 37:7 38:19
    38:25 40:3,13
theory  15:20
they're  37:13
things  10:19
    11:13 12:18 14:6
    14:11 21:6 31:21
think  6:25 8:7,8
    8:23 11:14,23
    17:16 18:5,22,24
    19:9,16,25 20:15
    20:25 21:8,19,25
    23:12 31:20 34:8
    34:24 35:14,25
    36:15,20 38:25
    40:13,17,21
thinks  20:17
    40:14
third  33:4
thomas  4:18 5:18

thought  34:6
    40:15
thoughts  38:17
three  9:2 10:8
    17:2 19:9
time  2:9 7:7,21
    10:8 16:1,4,5 17:9
    17:10 21:12 25:25
    27:19 39:25
timely  12:2
times  15:8
timing  32:8
today  6:9 10:13
    12:20 16:9 23:7
    27:10,14 34:14
    35:9
today's  26:3
togut  5:1
top  25:23
topic  13:18
tops  7:13
toronto  8:12
totally  21:3
track  24:17
trade  34:20
traditionally
    34:21
transcribe  18:11
transcribed  2:25
transcript  43:4
trial  16:8
tried  30:10
true  43:4
trust  10:20
trustee  3:14 6:13
    10:25 11:20 17:23
    18:17 24:15 25:4
    26:16 28:12,12
    39:10,12,24
trustee's  24:11
    26:4
trustees  24:15

trusts  11:7
try  14:11 39:20
turbines  10:23
turn  21:20 22:18
    23:13 26:22 31:2
    32:6 35:4
two  6:24 9:3,6
    17:13 19:18 20:11
    20:20 21:3 22:20
    22:21 26:22 35:16
    35:19
type  20:22
types  21:3
typically  14:7

**u**

u.s.  1:23 3:14
    24:11,15 26:4
    28:11,12
ultimately  14:13
    15:7,24 16:6 17:6
uncertainty  16:2
understand  20:24
    35:7 36:6
understanding
    26:5 38:10
united  1:1,12 3:13
    6:13 11:1,19 25:4
    26:16
unknown  1:25
    15:18
unnecessary
    20:18
unsecured  2:7
    11:17 25:23
untimely  20:18
unwarranted
    36:20
update  24:8
upload  36:1

**v**

v  2:10
value  14:10 33:16
    34:21

values  36:22
varick  3:15
various  12:11,16
vendor  34:20
veritext  43:20
vice  27:13
view  36:9
violation  32:17
    33:12 36:12
virgin  9:20
virtual  22:18
    26:22 31:2
voluntarily  19:25

**w**

walk  7:24 8:5
    10:5
walsh  5:20
want  23:5 37:13
wanted  7:20 28:3
    32:15 40:15
wave  11:25
way  9:10 10:10
    12:19 14:9 15:4
    16:12 17:6,15
we've  19:2
wednesday  18:21
went  12:11
wertkin  5:16
we'll  36:15 39:20
    41:10
we're  36:1
whatsoever  40:9
whidden  5:9
willing  21:6
wish  25:2 26:17
    28:25 30:18,20
    35:17
wishnew  3:10 6:9
    22:19 23:19,20,21
    24:21,22,24 25:12
    25:15 26:14,21
withdrawn  19:3,4
    36:14,21

| | |
|---|---|
| **won't** 35:9 | |
| **wording** 24:9 | |
| **work** 40:1 | |
| **working** 17:18,24 | |
| **world** 18:2 | |
| **worthwhile** 40:13 | |
| 40:14 | |
| **wrong** 35:13 | |

| **x** |
|---|

**x** 1:4,10 42:1

| **y** |
|---|

**year** 10:7 16:5
**years** 13:12
**yesterday** 8:15
  13:19 18:25 19:8
  19:9,14 33:1
  37:16 39:3
**yesterday's** 18:10
  20:20
**york** 1:2,14 3:6,16
  4:5,12
**you'd** 34:10
**you'll** 40:24
**you're** 36:10 37:4
  37:21

| **z** |
|---|

**zelina** 4:22